Case5:03-cv-05669-JW Document97 Filed05/12/04 Page1 of 13

[List of Counsel Appears on Last Page]

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, a California corporation,<br><br>　　　　Plaintiff/Counterclaim Defendant,<br><br>　　v.<br><br>MICRO THERAPEUTICS, INC., a Delaware corporation, and DENDRON GmbH, a German corporation,<br><br>　　　　Defendants/Counterclaim<br>　　　　and Third Party Plaintiffs,<br><br>v.<br><br>BOSTON SCIENTIFIC CORPORATION, a Delaware corporation, and TARGET THERAPEUTICS, INC., a Delaware corporation,<br><br>Third Party Defendants. | Case No: C 03 05669 JW (RS)<br><br>**NOTICE OF MOTION AND MOTION REGARDING DISCOVERY DISPUTES**<br><br>Date: June 16, 2004<br>Time: 9:30 a.m.<br>Before: Honorable Richard Seeborg, Courtroom 4, 5th Floor |

NOTICE OF MOTION AND MOTION REGARDING DISCOVERY DISPUTES
Case No.: C 03-05669 JW (RS)

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on June 16, 2004, at 9:30 a.m., or as soon thereafter as the matter may be heard, at the United States District Court for the Northern District of California, 280 South First Street, San Jose, California, in the courtroom of the Honorable Richard Seeborg, Defendants Micro Therapeutics, Inc. and Dendron GmbH ("MTI" or "Defendants"), will and hereby do move for an order regarding their discovery disputes with Plaintiff and Counterclaim Defendant The Regents of the University of California ("UCAL") and Third Party Defendants Boston Scientific Corporation and Target Therapeutics, Inc. (collectively "Boston Scientific"), identified herein pursuant to Civil Local Rule 7-1(a). Defendants' motion is based on this notice and motion, the accompanying memorandum, the declaration of Michelle M. Umberger, the pleadings and file herein, and upon such other matters as may be presented to the Court at the time of hearing.


# MEMORANDUM

## BACKGROUND AND STATEMENT OF ISSUES

An initial case management conference was held in this case before Judge James Ware on May 3, 2004. At that conference, the parties raised a number of disputed issues relating to the management of discovery, issues which were identified by the parties in their Joint Case Management Statement (Dkt. No. 85). At the conference, counsel for MTI asserted, for example, that MTI should be given immediate access to all discovery taken in the related *Cordis* case (Case No. C 02 1474 JW (RS)), a case also pending in front of Judge Ware in which Boston Scientific and Target Therapeutics are the plaintiffs and in which they asserted two of the very patents which are at issue in this case.[1] Judge Ware responded that although he found MTI's arguments "compelling," all discovery issues should be taken up with Magistrate Judge Seeborg. Accordingly, MTI requests the Magistrate resolve these disputed issues as follows:

1. The protective order in this case should include counsel in related litigation in Europe;
2. UCAL and Boston Scientific should be required to immediately produce to MTI all discovery previously produced by or taken from them in the *Cordis* case;
3. Discovery should proceed on all issues and not be limited to claim construction;
4. MTI, as the party defending itself against the patents-in-suit, should have the same number of discovery requests and depositions as UCAL and Boston Scientific, the purported owner and exclusive licensee of the patents-in-suit; and
5. The two named inventors of the numerous patents-in-suit should be produced for deposition by MTI for up to three days and named inventor Dr. Guglielmi should be produced by UCAL without resort to the Hague Evidence Convention.

---

[1] In an apparent attempt to avoid having to produce the *Cordis* documents, UCAL's disclosure of asserted claims served on MTI on May 10, 2004 did not assert infringement of any claim from either of these two patents. However, unless and until UCAL dismisses all claims relating to these two patents, "with prejudice," they remain in this case. If UCAL chooses to make such a motion, MTI will seek its attorneys' fees and other costs associated with defending itself against these patents from the period of from December 16, 2003 (the date UCAL filed its complaint) through May 10, 2004. In any event, these patents remain in the case by virtue of MTI's counterclaim for declaratory judgment that these patents are invalid and unenforceable, as well because of MTI's counterclaim that the assertion of these patents is a violation of antitrust law.

# ARGUMENT

## I. COUNSEL IN RELATED EUROPEAN LITIGATION SHOULD BE INCLUDED IN THE PROTECTIVE ORDER IN THIS CASE.

MTI has requested that the protective order include the parties' European counsel so that they will have access to documents produced and other discovery taken in this case, including transcripts of depositions. UCAL and Boston Scientific oppose such a provision. Four of the patents at issue in the present litigation (U.S. Patent Nos. 5,855,578; 5,947,962; 5,976,126; 6,066,133) claim priority through the application that issued as U.S. Patent No. 5,354,295 ("the '295 patent"), also at issue in this case. [2] The '295 patent is the American counterpart to European Patent No. 0 803 230 ("the EP '230 patent") at issue in proceedings in the United Kingdom, Germany, and the Netherlands, involving Defendants and UCAL and/or Boston Scientific affiliates. The validity of the EP '230 patent is at issue in all of the foreign proceedings as is the validity of the patents in this case, which share the same priority date and substantially similar specifications. Therefore, any discovery in this case will be highly relevant to the foreign proceedings. All of these patents involve the same inventors, the same technology and the same underlying activity during the same time period. With few exceptions, prior art developed in the U.S. will be applicable in the foreign courts -- which is precisely why UCAL and Boston Scientific are trying so hard to prevent the European courts from learning about prior art.

As would be expected in such a worldwide patent battle, U.S. counsel for MTI regularly confers with its European counsel in order to ensure that the defenses presented on both sides of the Atlantic are coordinated, consistent and effective. As an accused infringer in multiple jurisdictions, MTI deserves nothing less, and preventing the free-flow of information among MTI's various counsel only serves to unfairly hamstring MTI. Further, there is no question that MTI's proposal will save much time and expense in avoiding duplicative discovery. MTI's proposed protective order

---

[2] UCAL served its Disclosure of Asserted Claims and Preliminary Infringement Contentions on May 10, 2004. UCAL's disclosure does not include claims of the '295 patent, however those patents are asserted in UCAL's complaint and are the subject of declaratory judgment counterclaims of invalidity and unenforceability.

adds only the outside attorneys in those currently pending foreign proceedings, therefore there should be no concern that disclosure of confidential information is not properly limited.

Both the Ninth Circuit and the Federal Circuit applying Ninth Circuit law have permitted counsel in other related litigation to have access to documents produced under a protective order, provided counsel agree to the same restrictions as in the protective order in the first case. *See In re Jenoptik AG*, 109 F.3d 721 (Fed. Cir. 1997) (denying writ of mandamus seeking to vacate district court's modification of protective order permitting disclosure in German proceeding); *Beckman Indus. v. Int'l Ins. Co.*, 966 F.2d 470 (9th Cir. 1992) (granting party's motion to intervene in settled federal action involving the same insurer in order to gain access to deposition transcripts produced under a confidentiality order in federal action). "Ninth Circuit precedent strongly favors disclosure to meet the needs of parties in pending litigation," especially where counsel agrees to give the documents the same protection as provided in the original protective order. *Jenoptik*, 109 F.3d at 722-23; *Beckman*, 966 F.2d at 475. *See also Wilk v. Am. Med. Ass'n*, 635 F.2d 1295, 1299 (7th Cir. 1980):

> We therefore agree with the result reached by every other appellate court which has considered the issue, and hold that where an appropriate modification of a protective order can place private litigants in a position they would otherwise reach only after repetition of another's discovery, such modification can be denied only where it would tangibly prejudice substantial rights of the party opposing modification.

635 F.2d at 1299 (citations omitted) (quoted by *Jepson, Inc. v. Makita Elec. Works*, 30 F.3d 854 (7th Cir. 1994) (noting *Wilk* has been followed by many other circuits including the Ninth Circuit)). These decisions and others "stress[] the importance of eliminating duplicative discovery." *Beckman,* 966 F.2d at 475; *Wilk*, 635 F.2d at 1299; *Kraszewski v. State Farm Gen. Ins. Co.*, 139 F.R.D. 156, 159 (N.D. Cal. 1991) ("The law in the Ninth Circuit is settled. In cases such as this one, the protective order should be amended to allow use of the discovery in the other litigation.") ("Rule 1 of the Federal Rules requires the Rules to be construed 'to secure the just, speedy, and inexpensive determination of every action.'").

As in these cases, UCAL and Boston Scientific cannot demonstrate any prejudice of substantial rights that would be caused by outside counsel in Europe having access to this discovery

4

NOTICE OF MOTION AND MOTION TO DETERMINE DISCOVERY ISSUES
Case No.: C 03-05669 JW (RS)

(other than the loss of invalid patents abroad).[3] "[L]egitimate interests in privacy can be protected by putting the intervenors under the same restrictions as those contained in the original protective order. Here, intervenors already have agreed to use the information in accordance with protective orders in the state actions." *Beckman*, 966 F.2d at 475. In *Jenoptik*, a party in this district moved to disclose confidential deposition testimony taken in that case which was inconsistent with assertions made in a German case to the German court. *Id.* The Federal Circuit upheld the district court's grant of the motion, noting that the parties had agreed that the depositions would be treated under the same restrictions as under the current action. *Id.* at 722-23 (also dismissing opponent's arguments as to usability in the German court, stating the court's order simply enabled the German court to have the deposition material so that it could apply its rules).

Given that (1) the discovery in this case will be highly relevant to the European proceedings; and (2) UCAL and Boston Scientific cannot show any substantial prejudice in having outside European counsel who will agree to abide by the same protective order restrictions as in this case, the Court should permit European counsel to have access to discovery in this case.

**II.   UCAL AND BOSTON SCIENTIFIC SHOULD IMMEDIATELY PRODUCE TO MTI DISCOVERY PRODUCED BY OR TAKEN FROM THEM IN THE *CORDIS* CASE.**

*Boston Scientific and Target Therapeutics Inc. v. Cordis Corp.*, Case No. C 02 1474 JW (RS) (the "*Cordis* case"), is currently pending before this Court. Two of the patents at issue in the *Cordis* case (U.S. Patent Nos. 5,895,385 and 6,010,498) are also at issue in this case and claim priority to an application which issued as U.S. Patent No. 5,122,136, also asserted against MTI in the present litigation.[4] Therefore, the specifications of these patents are necessarily the same or substantially

---

[3] UCAL and Boston Scientific obviously fear that information that they have been withholding from those European patent offices and courts will come to light and reveal that they are not entitled to those European patents. As the Federal Circuit recently commented, "there is a significant public policy interest in removing invalid patents from the public arena." *Smithkline Beecham Corp. v. Apotex Corp.,* 2004 WL 868425, at * 16 (Fed. Cir. April 23, 2004). Such public interest applies equally forcefully with respect to UCAL and BSC's European patents.

[4] UCAL's recent disclosure of asserted claims does not include claims of the '385 and '498 patents. UCAL's apparent tactic, *i.e.*, to attempt to avoid production of the *Cordis* documents, must fail. First, the '385 and '498 patents are asserted in UCAL's complaint and are the subject of declaratory judgment counterclaims of invalidity and unenforceability that remain in this case. Furthermore, the claims of the patents asserted by UCAL in their disclosure substantially overlap

*(Footnote continued)*

5
NOTICE OF MOTION AND MOTION TO DETERMINE DISCOVERY ISSUES
Case No.:  C 03-05669 JW  (RS)

similar (given the specification of an earlier application must support the claims in the new application in order to benefit from the earlier priority date). The named inventors on the patents at issue in the *Cordis* case are the same as here, Guido Guglielmi and Ivan Sepetka. The claimed inventions arise out of the same developmental activity at UCAL and Target during the same time periods.

UCAL and Boston Scientific both produced documents relating to the '385 and '498 patents in the *Cordis* case. *See* Pls. Opp. to Defendant Cordis's Motions to Shorten Time for Response to and Hearing On Cordis's Motion to Compel a 30(b)(6) Witness and the Production of Documents (Public Version), filed in Case No. C 02 1474 JW (RS) on April 29, 2004, at 2-3 (citations omitted):

> Boston Scientific has already produced over 50,000 pages of documents - including thousands of pages of the documents concerning clinical trials, device master records, prior art articles, foreign litigation pleadings and other documents . . . . Boston Scientific has also provided numerous witnesses for deposition including the named-inventors, former employees of Target, and others that worked for Target at the time of the inventions. This does not even include the significant additional discovery that Cordis has obtained directly from the Regents of the University of California, owner of two of the patents-in-suit.

Most of this discovery (of Boston Scientific or UCAL) will be extremely relevant to Defendants' defense in this matter.[5] There can be no genuine dispute on this point. Yet UCAL and Boston Scientific refuse to produce those documents and relevant deposition transcripts to MTI in this litigation. As these documents are readily reproducible, MTI requests that any documents

---

with claims asserted against Cordis. Indeed, several key claim limitations are at issue in both cases. The terms "wire" and "coupled," at issue in *Cordis*, are found in all of the patents asserted against MTI in this case. Other terms at issue in *Cordis,* such as "detachable" and "elongate tip portion" are also found in the majority of the patents asserted against MTI. Further, thirty-one claims asserted against MTI recite the limitation "applying any force by said distal tip to any surface" or similar language; *cf.* the Court's determination in Cordis that "because of an express disavowment made during prosecution of the Guglielmi patents, all methods of detachment (mechanical or electrolytic) claimed in these patents are limited to a 'forceless letting go.'" Order Following Claims Construction Hearing, Case No. C02 1474 JW (RS), at 6. The discovery relating to the inventions claimed in the *Cordis* patents-in-suit are highly relevant to this case.

[5] MTI also served discovery requests on The Regents, Boston Scientific and Target on April 15, 2004, which includes Document Request Number 53, requesting "All transcripts of court proceedings and depositions and copies of documents produced by you in the *Boston Scientific Corporation and Target Therapeutics, Inc. v. Cordis Corporation* litigation at the United States District Court for the Northern District of California, San Jose Division, Case No. C 02 1474 JW."

produced by UCAL or Boston Scientific in the *Cordis* case be immediately produced to MTI.[6] As discussed above, a court should "eliminate[ ] duplicate discovery" when it can do so without prejudice. *See Beckman*, 966 F.2d at 475. Consistent with Ninth Circuit precedent and because production of an existing, defined set of documents in *Cordis*, "can place [Defendants] in a position they would otherwise reach only after repetition of another's discovery," the Court should permit Defendants to have access to the documents and depositions in that case. *Wilk*, 653 F.3d at 1299; *see also* Rule 1, Fed. R. Civ. P.

### III. DISCOVERY SHOULD PROCEED ON ALL ISSUES AND SHOULD NOT BE LIMITED TO CLAIM CONSTRUCTION.

In the Joint Case Management Statement, Boston Scientific requested that discovery be limited to issues relating to claim construction until after the claim construction hearing, which is now set for December 21, 2004. Both UCAL and MTI have commenced discovery on issues well beyond claim construction, including issues relevant to infringement, invalidity, inequitable conduct and damages. MTI requests that this discovery be permitted to continue on all such issues and should not wait for the Court's claim construction hearing late this year.[7]

Moreover, many of the issues overlap, and parsing claim construction discovery from discovery on other issues would be difficult, time consuming for both the Court and the parties, and would lead to significantly increased time and expense for the parties and this Court. First, it would cause piecemeal discovery. The inventors and many witnesses who have relevant information on

---

[6] There is a patent at issue in the *Cordis* case that is not asserted in this case (U.S. Patent No. 6,238,415, "the '415 patent"), a fact that both UCAL and Boston Scientific have continually used as an excuse for not producing otherwise relevant documents from the *Cordis* case. This is a red herring. None of the documents produced by UCAL should relate solely to the '415 patent because the '415 patent is a Target patent – not a UCAL patent. The only two named inventors on that patent are former Target employees. Moreover, one of the Target employees is Ivan Sepetka, who is an inventor of most of the twelve patents asserted by UCAL. To the extent, therefore, that there is any UCAL document or discovery pertaining to the '415, it certainly may be relevant to any one of a number of defenses that MTI has asserted. Thus, given the plain overlap of subject matter, inventors, and parties, documents related to the '415 patent are "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26.

[7] UCAL and Boston Scientific are simply seeking any delay possible to prevent evidence from coming to light that will expose their improper monopolies here and abroad.

---

7

NOTICE OF MOTION AND MOTION TO DETERMINE DISCOVERY ISSUES
Case No.: C 03-05669 JW  (RS)

claim construction, infringement, invalidity and unenforceability would have to be deposed twice – one pre-Markman and once post-Markman. Second, given UCAL and Boston Scientific's already evident disposition to fight production of discovery, there undoubtedly would be numerous disputes over whether requested discovery is related to claim construction or some other issue. Third, the entire case would slow down due to the repeated involvement of the Court in resolving discovery disputes, each of which would have to be briefed, argued and ultimately complied with by the parties, potentially leading to re-deposition of witnesses who are instructed b y UCAL and Boston Scientific not to answer questions alleged to be directed to subjects other than claim construction. Current court dates may well be pushed back because of the delays caused by these disputes and by MTI's need for sufficient discovery for its defenses following claim construction discovery. Lastly, there almost certainly can be no settlement until MTI has a chance to develop its defenses.

In sum, bifurcating discovery would lead to enormous and unnecessary expense and delay for the parties -- especially for MTI, which was sued by UCAL on twelve invalid and unenforceable patents. MTI should be promptly afforded an opportunity to develop its defenses so as to dispose of this case through dispositive motions sooner rather than later.

### IV. DISCOVERY LIMITATIONS SHOULD BE EQUAL FOR BOTH SIDES.

UCAL's complaint asserts that MTI's Sapphire products infringe twelve of the Guglielmi patents. In its disclosure of asserted claims, UCAL asserts that MTI's products infringe seventy claims. MTI has asserted declaratory judgment claims against UCAL and Boston Scientific that MTI does not infringe, and that all twelve patents are invalid and unenforceable, and that UCAL and Boston Scientific have committed antitrust violations. Because of the sheer number of asserted claims and patents in suit, the parties will need more than the default number of discovery requests and depositions provided under the Federal Rules.

Moreover, there is no question that this lawsuit is between MTI, on the one hand, and UCAL and Boston Scientific, on the other. Therefore, MTI requests that discovery limitations (number of interrogatories, requests for admissions, and depositions) be equal as between MTI and, collectively, UCAL and Boston Scientific. UCAL and Boston Scientific insist that they should *each* have the same number of discovery requests as MTI, effectively doubling the discovery for their side.

MTI requests that discovery limitations be equitably established as follows:

| Discovery | Defendants' Proposal |
|---|---|
| Depositions | (1) UCAL shall be limited to 20 fact depositions and 5 expert depositions; <br> (2) Boston Scientific and Target, collectively, shall be limited to 20 fact depositions and 5 expert depositions; and <br> (3) MTI shall be limited to 40 fact depositions and 10 expert depositions. |
| Interrogatories | (1) UCAL shall be limited to 25 interrogatories; <br> (2) Boston Scientific and Target, collectively, shall be limited to 25 interrogatories; and <br> (3) MTI shall be limited to 50 interrogatories. |
| Requests for Admissions | (1) UCAL shall be limited to 50 requests for admissions (with 50 additional requests for document authentication); <br> (2) Boston Scientific and Target shall be limited to 50 requests for admissions (with 50 additional requests to authenticate); and <br> (3) MTI shall be limited to 100 requests for admissions (with 100 additional requests for document authentication). |

## V. MTI SHOULD BE PERMITTED UP TO THREE DAYS FOR THE DEPOSITIONS OF THE INVENTORS AND DR. GUGLIELMI SHOULD BE COMPELLED TO APPEAR WITHOUT RESORT TO THE HAGUE CONVENTION.

The named inventors of the patents-in-suit are Guido Guglielmi, who was a professor at the University of California Los Angeles Medical Center, and Ivan Sepetka, who was an employee of third party defendant Target Therapeutics. MTI has requested up to three seven-hour days to examine the inventors as to the seven patents and seventy claims in suit. UCAL and Boston Scientific are unwilling to agree to MTI's request.

MTI expects that a fair examination of Dr. Guglielmi and Mr. Sepetka will require more than the one seven-hour day specified in Rule 30, Fed. R. Civ. P., for the reasons discussed above in Section IV regarding the sheer number of claims, patents and issues in this case. Therefore, MTI requests that the depositions of each of the inventors be permitted to continue for up to three seven-hour days. MTI further requests that, in light of Dr. Guglielmi's contractual obligation to assist and cooperate with The Regents with respect to any actions to enforce the patents-in-suit, UCAL should produce him for deposition without use of the Hague Evidence Convention. *See* Ex. A to Decl. of Michelle M. Umberger Regarding Discovery Disputes at 2 (wherein Dr. Guglielmi agrees to "do all

acts necessary or required to be done for the procurement, maintenance, **enforcement and defense** of Letters Patents for said inventions. . . .") (emphasis added). UCAL, therefore, need only say the word and Dr. Guglielmi would have to appear for deposition in the United States.

The United States Supreme Court has held that a party need not be required to resort to Hague Convention procedures whenever discovery is sought from a foreign litigant. *See Société Nationale Industrielle Aérospatiale v. United States Dist. Court for the Southern District of Iowa*, 482 U.S. 522 (1987).

> In many situations the Letter of Request procedure authorized by the Convention would be unduly time consuming and expensive, as well as less certain to produce needed evidence than direct use of the Federal Rules. A rule of first resort in all cases would therefore be inconsistent with the overriding interest in the 'just speedy, and inexpensive determination" of litigation in our courts. See Fed. Rule Civ. Proc. 1.

*Id.* at 542-43 (internal footnote omitted). The district court has jurisdiction independent of the Hague Convention to order a foreign litigant to produce evidence physically located in a signatory nation. *Id.* at 539-40.

The production of Dr. Guglielmi for deposition without the expensive and cumbersome procedures of the Hague Evidence Convention was the subject of a motion before this Court in the *Cordis* case. In addition to the compelling arguments made by Cordis in its motion, MTI's request is further buttressed by the fact that UCAL is a party to this case and Dr. Guglielmi, an ex-UCAL employee, is believed to have received millions of dollars in royalties from UCAL. In this situation, MTI should not be required to engage in the "unduly time consuming," "expensive" and "less certain" procedures of the Hague Convention. *See id.* UCAL sued on twelve patents, all of which name Dr. Guglielmi. UCAL should be required to produce its named inventor who has evidence critical to MTI's defenses and who is clearly under its control in an infringement suit that UCAL itself filed.

## CONCLUSION

For the reasons set forth above, Defendants reque st that the Court enter the accompanying [Proposed] Order Regarding Discovery Disputes granting the relief requested herein.

| | | |
|---|---|---|
| 1 | | |
| 2 | | |
| 3 | Dated: May 12, 2004 | By: __/s/_____ |
| 4 | | Michelle M. Umberger (*pro hac vice*) |
| | | Attorney for Defendants and Counterclaim and Third Party Plaintiffs Micro Therapeutics, Inc. and Dendron GmbH |
| 5 | | |
| 6 | | HELLER EHRMAN WHITE & MCAULIFFE LLP |

11

NOTICE OF MOTION AND MOTION TO DETERMINE DISCOVERY ISSUES
Case No.: C 03-05669 JW (RS)

[Listing of Counsel]

MICHAEL K. PLIMACK (CSB No. 133869)
HELLER EHRMAN WHITE & MCAULIFFE LLP
333 Bush Street
San Francisco, CA 94104-2878
Telephone: (415) 772-6000
Facsimile: (415) 772-6268

JOHN S. SKILTON (*pro hac vice*)
DAVID J. HARTH (*pro hac vice*)
MICHELLE M. UMBERGER (*pro hac vice*)
GABRIELLE E. BINA (*pro hac vice*)
SARAH C. WALKENHORST (*pro hac vice*)
HELLER EHRMAN WHITE & MCAULIFFE LLP
One East Main Street, Suite 201
Madison, WI 53703
Telephone: (608) 663-7460
Facsimile: (608) 663-7499

COLIN G. SANDERCOCK (*pro hac vice*)
MARVIN A. MOTSENBOCKER (*pro hac vice*)
HELLER EHRMAN WHITE & MCAULIFFE LLP
1666 K Street N.W., Suite 300
Washington, DC 20006
Telephone: (202) 912-2000
Facsimile: (202) 902-2020

Attorneys for Defendants/Counterclaim and Third Party Plaintiffs Micro Therapeutics, Inc. and Dendron GmbH

NOTICE OF MOTION AND MOTION TO DETERMINE DISCOVERY ISSUES
Case No.: C 03-05669 JW (RS)