1

2

3                                                              **E-Filed**

4                                                              June 29, 2004

5

6

7

8                              NOT FOR CITATION

9              IN THE UNITED STATES DISTRICT COURT

10          FOR THE NORTHERN DISTRICT OF CALIFORNIA

11                          SAN JOSE DIVISION

12

13   THE REGENTS OF THE UNIVERSITY            NO. 5:03-cv-5669-JW (RS)
     OF CALIFORNIA,
14                                            **ORDER REGARDING
                Plaintiff,                    DISCOVERY DISPUTES**
15
        v.
16
     MICRO THERAPEUTICS, INC., ET AL.,
17
                Defendants.
18   _____/

19                             I.  INTRODUCTION

20          Defendants Micro Therapeutics, Inc. and Dendron GmbH (collectively "MTI") filed a motion regarding

21   certain discovery disputes between them and Plaintiff and Counterclaim Defendant, The Regents of the

22   University of California ("UC") and Third Party Defendants Boston Scientific Corporation and Target

23   Therapeutics, Inc. (collectively "BSC").  The motion was fully briefed and heard by the Court on June 23,

24   2004.  Based on all papers filed to date, as well as on the oral argument of counsel, the Court grants in part

25   and denies in part the motion for the reasons set forth below.

26                             II.  BACKGROUND

27          The current lawsuit arises out of a patent infringement complaint filed by UC against MTI for the

28   infringement of a group of patents owned by UC and licensed to Boston Scientific's subsidiary, Target

United States District Court

For the Northern District of California

Therapeutics, Inc.  In the course of the litigation, a number of discovery disputes have arisen.  In their motion, MTI requests that: 1) the proposed protective order in this case be amended to afford access to counsel of record in related litigation in Europe; 2) UC and BSC immediately produce to MTI all discovery previously produced by or taken from them in another action involving these parties, <u>Boston Scientific and Target Therapeutics, Inc. v. Cordis Corp.</u>, Case No. C 02 1474 JW (RS); 3) discovery proceed on all issues and not be limited to claim construction; 4) limits on various discovery methods be expanded from those prescribed in the Federal Rules; 5) Guido Guglielmi ("Guglielmi") and Ivan Sepetka ("Sepetka") be produced for deposition to MTI for up to three days each; and 6) Guglielmi be produced by UC without requiring MTI to invoke the Hague Evidence Convention.  UC and BSC oppose the motion.  In addition, BSC requests that the Court stay MTI's discovery requests propounded to it until the presiding judge rules on BSC's pending motion to dismiss.

### III.  STANDARDS

Entry of a protective order is warranted where the moving party establishes "good cause" for an order and justice so requires to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense.  Fed. R. Civ. Pro. 26(c).  "For good cause to exist, the party seeking protection bears the burden of showing specific prejudice or harm will result if no protective order is granted."  <u>Phillips v. General Motors Corp.</u>, 307 F.3d 1206, 1210-11 (9th Cir. 2002).  "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test."  <u>Beckman Industries, Inc. v. Int'l Ins. Co.</u>, 966 F.2d 470, 476 (9th Cir. 1992).

Under the Federal Rules of Civil Procedure, Rule 26(b)(1),

> [p]arties may obtain discovery regarding any matter, not privileged, that is
> relevant to the claim or defense of any party. . .  For good cause, the court may
> order discovery of any matter relevant to the subject matter involved in the action.
> Relevant information need not be admissible at the trial if the discovery appears
> reasonably calculated to lead to the discovery of admissible evidence.

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Federal Rules of Evidence, Rule 401.  Discovery may be limited by the court for good cause shown "to protect a

**United States District Court**
For the Northern District of California

party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ.

P. 26(c).

Motions to compel are authorized by Rule 37 of the Federal Rules of Civil Procedure:

[If] a party fails to answer an interrogatory submitted under Rule 33, or if a party, in response to a request for inspection submitted under Rule 34, fails to respond that inspection will be permitted as requested or fails to permit inspection as requested, the discovering party may move for an order compelling an answer, or a designation, or an order compelling inspection in accordance with the request. The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make the discovery in an effort to secure the information or material without court action.

Fed. R. Civ. P. 37(a)(2)(B).

## IV.  DISCUSSION

A.      BSC's Motion to Stay Discovery.

BSC seeks to stay all discovery propounded to it by MTI until the presiding judge rules on BSC's motion to dismiss[1]. BSC's request implicates two separate areas of potentially discoverable material.  The first comprises a discrete set of documents previously produced in the related Cordis litigation.  The second comprises an as yet undefined body of discovery that MTI may seek from BSC.

With respect to the Cordis documents, MTI has satisfied the Rule 26 test by demonstrating that the requested material is discoverable.  Moreover, as MTI points out, the bulk of the Cordis case documents, as set forth in more detail in Section C below, are likely to be subject to production even if BSC succeeds in its motion to dismiss and becomes a third party in this particular action.  Accordingly, with the exception of documents pertaining solely to U.S. Patent No. 6,238,415 (the "415" patent) which MTI has not shown to be relevant here, the Cordis documents must be produced by BSC.

With respect to other discovery MTI seeks to propound to BSC, such requests must await the ruling by the presiding judge on BSC's motion to dismiss MTI's third party claim against it.  Courts have found that a stay on discovery may be appropriate where a dispositive motion is pending.  See Alaska Cargo Transport, Inc. v. Alaska Railroad Corp., 5 F.3d 378, 383 (9th Cir. 1993) (holding that the trial

_____

[1]The hearing on BSC's motion to dismiss MTI's Third Party First Amended Complaint is scheduled for Friday, July 9, 2004.

United States District Court

For the Northern District of California

court did not abuse its discretion in staying discovery pending disposition of motions to dismiss); <u>Little v. City of Seattle</u>, 863 F.2d 681, 685 (9th Cir. 1989) (holding that the trial court did not abuse its discretion in staying discovery pending a summary judgment motion regarding defendant's immunity claim).

Here, MTI makes no showing that it will need discovery to respond to BSC's motion to dismiss. Since that motion will be decided shortly, it is unlikely that MTI will be prejudiced if they await its outcome. If the stay is not granted, and BSC is later dismissed from the case, it will have been subject, potentially, to an unnecessary response to discovery requests, the loss of discovery protections afforded to third parties, or both. Therefore, with the exception of the <u>Cordis</u> case materials, discovery from BSC will be stayed pending disposition of BSC's motion to dismiss.

B.    <u>MTI's Request to Include European Counsel in the Protective Order.</u>

MTI requests that their European counsel be included in the group accorded access to discovery under the proposed protective order. Entry of a protective order is warranted where the moving party establishes "good cause" for an order and justice so requires to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense. Fed. R. Civ. Pro. 26(c). MTI bears the burden of establishing "good cause" for the inclusion of European counsel in the proposed protective order. It supports that request by arguing discovery in this case is highly relevant to the foreign proceedings.  MTI notes that its U.S. counsel regularly confers with their European counterparts to ensure that the defenses presented in this court and the European tribunals are coordinated and consistent.  In addition, MTI argues, much time and expense would be saved, and duplicative discovery avoided, if European counsel had access to discovery from this litigation.

The language contained in the proposed protective order, however, explicitly states that information or documents obtained "shall be used by a Receiving Party solely for the purpose of this action and any appeals therefrom, and shall not be disclosed or used in any other legal proceeding, including any legal proceeding, involving any of the parties . . ." This effectively precludes MTI from using the material in European proceedings if its only source for that material is by virtue of the protective order in this action. MTI points to no authority for the proposition that access should be provided merely because it would facilitate a particular party's ability to coordinate related legal proceedings.

4

United States District Court

For the Northern District of California

1    The only case cited by MTI which involved an attempt to use materials from U.S. litigation in a

2    foreign proceeding, concerned extending a protective order to provide a German court with a transcript

3    from a deposition that had already been taken for the specific purpose of contradicting an earlier filing with

4    that foreign court.  In re Jenoptik AG, 109 F.3d 721 (Fed. Cir. 1997).  The current case is readily

5    distinguishable from In re Jenoptik AG, because MTI is requesting that its European counsel be given

6    access to all documents produced in this litigation without limitation for use in foreign proceedings.  In

7    addition, in In re Jenoptik AG, the protective order was modified to provide discovery to a German court,

8    and not counsel, as requested here.  Therefore, counsel in MTI's European litigation will be excluded from

9    those entitled to access discovery under the proposed protective order.

10   C.       MTI's Request For Cordis Case Discovery.

11   As noted above, in conjunction with BSC's discovery stay motion, MTI requests that UC and BSC

12   produce all discovery previously provided or obtained in the Cordis case.  Parties may obtain discovery

13   regarding any matter, not privileged, that is relevant to the claim or defense of any party or, upon good

14   cause shown, any matter relevant to the "subject matter involved in the action."  Fed. R. Civ. P. 26(b)(1).

15   MTI bears the burden of showing that UC and BSC should produce to MTI all discovery previously

16   provided or obtained by them in the Cordis case.

17   BSC argues that some of the discovery in the Cordis case is completely irrelevant to the issues in

18   the current suit.  In particular, BSC argues that the Cordis case involves damage issues, as well as, the

19   validity of the '415 patent, which are not part of this case.

20   In response, MTI argues that BSC's financial information will be the main focus of UC's damage

21   case since UC, who makes no sales at all, has pled that it is entitled to damages for "lost sales," and only

22   BSC sells products under the license agreement made between them and UC.  MTI also notes that it may

23   need BSC's financial information to show that there are non-infringing alternatives to the embolic coil

24   product marketed by BSC.

25   In addition, MTI alleges that two of the patents in Cordis action, U.S. Patent Nos. 5,895,385 ("the

26   '385 patent") and 6,010,498 ("the '498 patent"), are also at issue in this case and claim priority to an

27   application which was issued as U.S. Patent No. 5,122,136 ("the '136 patent") also asserted against MTI

28

5

United States District Court
For the Northern District of California

1   in the present litigation.  With regard to the '385 and '498 patents, MTI alleges that they are the subject of

2   declaratory judgment counterclaims for invalidity and unenforceability that remain in the case.  In addition,

3   MTI alleges that the patent claims asserted by UC in its initial disclosures substantially overlap with claims

4   asserted against Cordis.  According to MTI, several key terms, such as, "wire," "coupled," "detachable,"

5   and "elongate tip portion" are at issue in both the <u>Cordis</u> case and this action.  <u>See</u> MTI Motion Regarding

6   Discovery Disputes at p. 5-6.  Finally, MTI argues that it should have access to discovery relating to the

7   '415 patent because it cites the work of Guglielmi as prior art.

8           MTI has met its burden of showing that the '385 and '498 patents and BSC's financial information

9   from the <u>Cordis</u> case may be relevant to MTI's case.  It has not shown, however, that discovery relating to

10  the '415 patent is similarly relevant.  As BSC notes, many patents cite the work of Guglielmi as prior art

11  and that, without more, does not amount to the requisite showing under Rule 26.  Accordingly, UC and

12  BSC must produce all discovery from the <u>Cordis</u> case, with the exception of information relating solely to

13  the '415 patent, within 20 days of the date of this order.

14  D.       <u>MTI's Request that Discovery Proceed on All Issues.</u>

15          MTI requests that discovery be permitted to proceed generally and not be limited to just claim

16  construction issues.  In support of this proposition, MTI notes that many issues in the case overlap, and

17  parsing claim construction discovery from discovery on other issues would be difficult and lead to increased

18  time and expense for the parties and for the Court.  MTI argues that it is not efficient for inventors and

19  witnesses, who have information on claim construction, infringement, invalidity, and unenforceability to be

20  deposed twice, one pre-<u>Markman</u> and once post-<u>Markman</u>.  The staging of discovery would also likely

21  lead to disputes over whether particular requested discovery is confined to "claim construction."

22          BSC argues that this court often stages discovery, first limited to claim construction issues and then,

23  once that process is complete, open to general discovery.  While admittedly that is a case management

24  device regularly utilized in patent litigation, it remains a decision to be made on a case by case basis.  Here,

25  BSC has not presented a convincing argument for the proposition that, in this particular action, staged

26  discovery confined initially to claim construction issues will either streamline the efficient management of this

27  matter or will lead to a reduction rather than expansion of discovery disputes.

28                                                      6

**United States District Court**
For the Northern District of California

E.     <u>MTI's Request to Expand Discovery Limits.</u>

MTI requests expanded discovery limits, including an increase in the number of depositions, interrogatories, and requests for admissions.  However, since BSC has a pending motion to dismiss, it is premature at this time to set limits on the number of specific discovery tools to be utilized by each party, at least until a final determination has been made on who will remain in this case.  As a result, the court instructs the parties to meet and confer to set such numbers after the presiding judge has ruled on BSC's motion to dismiss.

F.     <u>The Guglielmi and Sepetka Depositions.</u>

1.     Extended Deposition Time.

MTI requests up to three seven-hour deposition days for Guglielmi and the same limits for the Sepetka deposition.  Federal Rule of Civil Procedure 30(d)(2) was amended in 2000 to provide that a deposition be limited to one session of seven hours, unless otherwise ordered by the court or stipulated to by the parties.  However, the Rule also states that, "[t]he court must allow additional time consistent with Rule 26(b)(2) if needed for a fair examination of the deponent or if the deponent or another person, or other circumstance, impedes or delays the examination." Fed. R. Civ. P. 30(d)(2).

BSC suggests that MTI should be limited to one, seven hour period, and, if it believes it needs more time after the seven hours have elapsed, then it can seek appropriate relief from the Court if the parties cannot reach an agreement. <u>See</u> <u>Malec v. Trustees of Boston College</u>, 208 F.R.D. 23, 24 (D. Mass. 2002) (the preferred practice in seeking an extension of the seven hour deposition limit "is for the deposition to go forward to determine how much is able to be covered in the seven hours and, then, if additional time is needed, for counsel to stipulate to extend the deposition for a specific additional time period. If the parties cannot reach a stipulation, then Court intervention may be sought."). However, following the recommended procedure above would neither be effective, nor practical in this case. Since Guglielmi will be deposed abroad, it is not reasonable for MTI to depose Guglielmi for a day, fly back to America, petition the Court, and fly back to Europe. It is more reasonable, rather, to limit the number of deposition hours in advance.

UC argues that MTI will be receiving copies of the Guglielmi deposition taken in the <u>Cordis</u> case and therefore will not need an extended deposition here due to significant issue overlap.  In addition, UC avers that, if Guglielmi were asked to sit for an additional three days in this case, in addition to the four days provided in the <u>Cordis</u> litigation, the demand would be excessive, unduly burdensome, and without justification.  Also, UC asks that the deposition of Guglielmi be taken in Rome, Italy, his place of residence, at the same time as the deposition to be arranged in the <u>Cordis</u> case.

While Guglielmi has apparently endured four days of deposition concerning patents in <u>Cordis</u> which overlap with those at issue here, the deposition in the <u>Cordis</u> case was taken by Cordis, for its own purposes. In this case, MTI is entitled to frame its own questions for Guglielmi.  MTI notes that the devices in this case are different than that in the <u>Cordis</u> litigation, and that the defenses asserted by Cordis are different than those it asserts. The Court agrees on that basis that one seven-hour day to depose Guglielmi will likely be insufficient.  For these same reasons, even though MTI will likewise be provided with the transcripts of Sepetka's prior deposition in <u>Cordis</u>, one seven-hour day to depose Sepetka similarly is likely to be insufficient.  Therefore, MTI will be limited to two seven-hour deposition days for Guglielmi and the same time parameters for the Sepetka deposition. If Guglielmi requires the aid of an interpreter, then MTI will be afforded an additional seven hour day to depose him.  In fairness to the witness and to minimize the burden of the large number of deposition days, Guglielmi may require that he be deposed in Rome, Italy, where he resides.  With respect to scheduling, while it would seem convenient to depose Guglielmi in conjunction with his deposition in the <u>Cordis</u> case, the Court will not require MTI to conform to that schedule but will expect the parties to work together to arrange dates and times convenient for all concerned.

2.    Hague Evidence Convention.

MTI requests that UC produce Guglielmi for deposition without the need to invoke the Hague Evidence Convention.  The district court has jurisdiction independent of the Hague Convention to order a foreign litigant to produce evidence physically located in a signatory nation.  <u>Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Ct. For the S. Dist. of Iowa</u>, 482 U.S. 522, 539-40.

**United States District Court**

For the Northern District of California

1    UC argues that <u>Societe Nationale Industrielle Aerospatiale</u>, is a case about a "foreign litigant, i.e., a

2  named party," and does not involve a foreign, non-party witness.  <u>See</u> UC Opposition Brief at p. 8.

3  Although Guglielmi is not a named party in this case, he has a sufficient relationship established with UC to

4  permit him to be deposed without the need to trigger the Hague Convention.  This Court in the <u>Cordis</u> case

5  found that UC has the authority to require Guglielmi to make himself available for deposition in light of

6  Guglielmi's assignment of his rights, title, and interest in his patents to UC in which he agreed he would, at

7  the request of UC, "do all acts necessary or required to be done for the procurement, maintenance,

8  enforcement and defense" of the patents.  UC, by virtue of Guglielmi's contract with it, has the apparent

9  authority to require that he be present for a deposition by MTI.   As a result, through his close contractual

10  relationship with UC, Guglielmi, though not an actual foreign litigant, can be viewed as having sufficient ties

11  to one, and so, Hague Convention procedures do not have to be followed.

12    UC requests that the Court, in the event it determines Hague Convention procedures need not be

13  followed, require Dendron to make its foreign witnesses available for depositions also without the need to

14  resort to the Hague Convention.  In it's reply brief, MTI noted that it would be willing to do so if UC would

15  agree that Hague Convention procedures would not apply to the deposition of Guglielmi.  In light of this

16  court's order regarding Guglielmi, Dendron will be expected likewise to make its foreign witnesses available

17  for depositions without the need to resort to Hague Convention procedures.

18  G.    <u>Defendant's Employee Designations for Protective Order.</u>

19    In the course of the briefing on their motion, BSC noted an objection to MTI's inclusion of the

20  following individuals in the proposed protective order for purposes of document access: Cecily Hines,

21  General Counsel for ev3, Inc.; Thomas Wilder, President and CEO of MTI; Brian Strauss, Director of

22  Research and Development for MTI; and Dr. Herman Mondstadt, Managing Director of Dendron.  As this

23  issue was not fully briefed at the time of the hearing on this motion, the parties have been given leave to file

24  further briefing on this issue if they elect to do so.

25                              V.  CONCLUSION

26    For the reasons set forth herein, the Court finds that: 1) with the exception of the <u>Cordis</u>

27  documents, discovery directed to BSC will be stayed until the presiding judge rules on BSC's motion to

28                                         9

dismiss; 2) the protective order in this case shall not include MTI's counsel in related litigation in Europe; 3) UC and BSC are required to produce all discovery from the <u>Cordis</u> case, with the exception of information relating the '415 patent, within 20 days of the date of this order; 4) discovery may proceed generally and shall not be limited to claim construction issues; 5) the parties are ordered to meet and confer to set appropriate discovery limits after the presiding judge rules on BSC's motion to dismiss; 6) Guglielmi and Sepetka shall be produced to MTI for deposition for up to two seven-hour sessions each.  If Guglielmi requires the assistance of an interpreter, MTI will be allowed up to an additional seven-hour session to depose Guglielmi; 7) Guglielmi may require that he be deposed in Rome, Italy; 8) Guglielmi shall be produced for deposition by UC without the need to invoke the Hague Evidence Convention; 9) Dendron will make its foreign witnesses available for depositions without the need to invoke the Hague Evidence Convention; and 10) the parties may submit further briefing regarding MTI's designation of Cecily Hines, Thomas Wilder, Brian Strauss, and Dr. Herman Mondstadt for inclusion under the protective order for purposes of document access.

Dated:  6/29/04

/s/ Richard Seeborg
RICHARD SEEBORG
United States Magistrate Judge

United States District Court

For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court

For the Northern District of California

1    Copies of this order have been electronically provided to:

2    Gabrielle E. Bina    gbina@hewm.com,

3    Russell W. Binns    rbinns@goodwinprocter.com,

4    Charles G. Curtis    ccurtis@hewm.com,

5    J. Anthony Downs    jdowns@goodwinprocter.com,

6    Julie Lynn Fieber    jfieber@flk.com

7    David J. Harth    dharth@hewm.com,
8    pdean@hewm.com;csandercock@hewm.com;mmotsenbocker@hewm.com;tgresl@hewm.com;tanders@hewm.com;cherron@hewm.com;sryan@hewm.com;kdempski@hewm.com;gbina@hewm.com;ccurtis@hewm.com
9

10    Michael Francis Kelleher    mkelleher@flk.com,

11    Anjali Kumar    akumar@fenwick.com

12    Charlene M. Morrow    cmorrow@fenwick.com

13    Lynn H. Pasahow    lpasahow@fenwick.com

14    Michael K. Plimack    mplimack@hewm.com

15    Patrick E. Premo    ppremo@fenwick.com

16    Roland Schwillinski    rschwillinski@goodwinprocter.com,

17    John S. Skilton    jskilton@hewm.com, jmasur@hewm.com;swalkenhorst@hewm.com

18    Michelle M. Umberger    mumberger@hewm.com, zseyferth@hewm.com

19    Sarah C. Walkenhorst    swalkenhorst@hewm.com,

20    5:03-cv-5669 Notice will not be electronically mailed to:

21    James E. Holst
     John F. Lundberg
22    P. Martin Simpson
     University of California
23    1111 Franklin St., 8th Floor
     Oakland, CA 94607-5200
24

25    Marvin A. Motsenbocker
     Colin G. Sandercock
     Heller Ehrman White & McAuliffe LLP
26    One East Mail Street, Suite 201
     Madison, WI 53703

27

28

**Dated: 6/29/04**                           **Richard W. Wieking, Clerk**

                                              **By:_____DM_____**
                                                    **Chambers**

United States District Court

For the Northern District of California