1

2

3                                                               **\*E-FILED 4/9/07\***

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                   FOR THE NORTHERN DISTRICT OF CALIFORNIA

8                            SAN JOSE DIVISION

9   THE REGENTS OF THE UNIVERSITY OF              NO. C 03 05669 JW (RS)
10  CALIFORNIA,
                                                  **ORDER RE MOTIONS TO**
11              Plaintiff/Counterclaim Defendant, **COMPEL AND MOTIONS FOR**
         v.                                       **PROTECTIVE ORDERS**
12
    MICRO THERAPEUTICS, INC., et al,
13
14              Defendants/Counterclaimants and Third
                Party Plaintiffs,
15
         v.
16
    BOSTON SCIENTIFIC CORPORATION, et al.
17
18              Third Party Defendants.
19  _____/
20
21                            I. INTRODUCTION
22          Before the Court are six motions to compel further discovery responses or materials, five of
23  which are accompanied by cross-motions for protective orders.  Upon consideration of all the papers
24  filed to date, and the argument of counsel at the hearing, the motions will be granted in part and
25  denied in part, as set forth below.
26                            II.  PARTIES
27          Plaintiff in this particular patent infringement action is the Regents of the University of
28  California ("UC").  Defendants are Micro Therapeutics, Inc. and Dendron GmbH (collectively

**United States District Court**
For the Northern District of California

                                       1

"MTI").         UC licensed the patents in suit to Boston Scientific Corporation and Target

Therapeutics (collectively "Boston Scientific") who are third-party defendants herein to claims

brought by MTI.[1]

### III.  DISCUSSION

A.  <u>UC's Motion to Compel re MTI's Privilege Claims</u>[2]

At the conclusion of the briefing on this motion, the only remaining disputes between the

parties were as to the propriety of MTI's withholding 26 documents under a claim of attorney-client

privilege or work product protection and redactions on an additional five documents based on the

same claims.  As discussed at the hearing, the Court concluded that the circumstances warranted *in

camera* review of the documents in dispute.  Having now conducted that review, the Court is

satisfied that the assertion of privilege or work product protection is warranted as to all of the

documents withheld or redacted.  In every case the information withheld plainly reflects legal

analysis prepared with the assistance of, or in communication with, counsel.  To the extent that any

of the information is not privileged, MTI has made an adequate showing that the prerequisites for

protection under work product protection apply and there is no basis to pierce that protection.

Although MTI has not, in every case, established with certainty the circumstances under which the

documents were created, there is no basis to infer that they were circulated in a manner that would

waive any protections.  Likewise, while the work product doctrine would not preclude discovery of

any underlying *facts* in the possession of MTI, the withholding of these documents does not appear

to deprive UC of discovery of any such facts, but only of the efforts of MTI, in conjunction with its

attorneys, to analyze the legal significance of such facts.  Accordingly, the motion to compel is

DENIED.

---

[1]  Additional  factual background describing this action may be found in prior court orders issued by the presiding judge and the undersigned, and will not be repeated here.

[2]  The section headings herein are intended only to provide a convenient identification of each motion.  No significance should be ascribed to the headings to the extent that any of them paraphrase or do not completely describe all of the issues presented by a particular motion.

United States District Court

For the Northern District of California

B.  <u>UC's Motion to Compel re MTI's Gamma Product</u>

This motion implicates two separate categories of information.  First, MTI has engaged in an effort to develop a new product that would serve similar or identical purposes as its accused technology.  In UC's view, that project is intended to develop a non-infringing alternative to the accused products, in the event UC is correct that MTI's current products infringe the patents in suit.  MTI's development efforts are referred to as "Project Gamma."[3]  MTI has already produced in discovery copies of documents it submitted to the Federal Drug Administration regarding Project Gamma and certain 2007 sales forecasts related to Gamma.  By this motion, UC seeks additional documents regarding the project, contending that any efforts by MTI to develop a non-infringing alternative are relevant with respect to questions of validity (e.g., whether the claimed invention was "obvious"); with respect to the amount of a "reasonable royalty"; and with respect to the question of whether any infringement was "willful."  MTI disagrees that there is any relevance to its product development efforts, and notwithstanding the protective order in place in this action, it is reluctant to disclose sensitive information regarding its recent product development efforts.

The specific discovery requests in dispute are Document Request Nos. 5 and 14, and Deposition Topic No. 30.  Notably, MTI's written responses asserted *no* objections to these requests except to the extent they implicated any attorney-client privileged or work product materials.  MTI agreed to produce all non-privileged documents responsive to the document requests and to produce a deposition witness to testify on Topic No. 30.

The arguments MTI now raises as to relevance and trade secret concerns are not persuasive.  UC has adequately shown that MTI's "design around" efforts are pertinent.  MTI has not argued or shown that responding to the requests would be unduly burdensome.  MTI's concern about disclosing trade secrets or other sensitive business information may be legitimate, but MTI has failed

---

[3]  UC's opening brief asserts that prior discovery has revealed at least two alternative design projects existed, but does not further identify that discovery or the projects to which it is referring. MTI's opposition brief offers its belief that UC may have been referring to a now-abandoned project conducted at Wayne State University, and asserts that UC has already obtained documents and deposition testimony regarding that project.  Because UC's reply brief only refers to the Gamma project, the Court presumes that the present controversy is limited to the adequacy of MTI's production of information regarding that project.

3

1    to show that the existing protective order is inadequate to address those issues.  Accordingly, UC's

2    motion is GRANTED with respect to Document Request Nos. 5 and 14, and Deposition Topic No.

3    30.

4        The second prong of this motion seeks to compel MTI to amend its responses to

5    Interrogatory Nos. 12-14, or in the alternative, to provide further deposition testimony under Topic

6    No. 24 to address those same issues.[4]  Interrogatory No. 12 requests MTI to "identify all facts

7    concerning each and every omission or misrepresentation" allegedly made by UC or Boston

8    Scientific to the United States Patent and Trademark Office ("PTO") in connection with the

9    prosecution of the patents in suit. Interrogatory No. 13 asks MTI to identify all facts supporting the

10   claim that any such misrepresentation was made with *intent* to deceive, and Interrogatory No. 14

11   seeks facts supporting the contention that any such misrepresentation was *material.*  MTI's response

12   to Interrogatory No. 12 refers to and purports to incorporate numerous pleadings and deposition

13   transcripts.  MTI's responses to Interrogatories Nos. 13 and 14 simply refer to and incorporate the

14   response to Interrogatory No. 12.  Ordinarily, such responses would be deficient.  Here, however,

15   the point MTI is trying to make is that its contentions on these issues have been the subject of

16   extensive motion practice and discovery and are well known to UC, such that to require further

17   response would constitute nothing more than "make work."

18       The fact that MTI may have extensively and repeatedly disclosed its contentions and

19   evidence on this subject does not eliminate UC's right to have a single, clear, statement as to what

20   omissions or  misrepresentations MTI intends to prove.  The response to Interrogatory No. 12 comes

21   close to providing that information insofar as it specifically identifies (1) the alleged failure to

22   disclose the "1983 Bari paper" on a timely basis, and (2) the allegedly false and misleading nature of

23   the translation of that paper when it was ultimately provided to the PTO.[5]  The response, however, is

24

25       [4]  The motion originally also sought further responses to Interrogatories Nos. 17, 19-21, and
26   31-34, and further deposition testimony on Topic Nos. 26-28.  In its reply brief, UC acknowledges
     that those issues have been resolved.

27       [5]  Although this interrogatory response does not specify what MTI contends was false or
     misleading about the translation, it appears the parties are in agreement that the only issue is the
28   translation of the word "rottura."  If MTI contends any other aspect of the translation was false or

United States District Court
For the Northern District of California

qualified by the phrase "without limitation," thereby purporting to reserve MTI's right to rely on additional alleged misrepresentations or omissions later.

A response to an interrogatory seeking a party's contentions or requiring a party to "state all facts" supporting a particular proposition never precludes that party from seeking to introduce other facts or contentions upon a showing of good cause as to why the facts or contentions were unknown at the time of the response. That, however, does not serve to permit a response like this one, which implies MTI may *presently* possess other facts or contentions that it is not disclosing. Accordingly, MTI shall serve an amended response to Interrogatory No. 12 that lists, without limitation, any and all representations or omissions that MTI contends were made by UC or Boston Scientific to the PTO in connection with the patents in suit. Under the particular circumstances of this case, however, MTI will not be required to identify with greater specificity the facts and evidence on which it is relying to support its contentions that those misrepresentations or omissions (1) were made, (2) were made with intent to mislead, and, (3) were material. This ruling is based on the assumption that it is unlikely that MTI will identify any misrepresentation or omission other than the two listed in its prior response to Interrogatory No. 12; accordingly, this order is without prejudice to UC's ability to seek further specification of supporting facts or evidence should MTI identify any misrepresentation or omission that is materially different from the two previously disclosed.

Finally, UC's alternative request for deposition testimony on this subject is denied. Although Topic 24 is not phrased as seeking "contentions" *per se*, by asking for a deponent to testify as to "each and every" alleged omission, it effectively is contention discovery. As such, a deposition is generally an inappropriate vehicle for the inquiry. *See McCormick- Morgan, Inc. v. Teledyne Indus., Inc*., 134 F.R.D. 275, 286-287 (N.D. Cal. 1991), (*rev'd in part on other grounds*, 765 F. Supp. 611 (N.D. Cal. 1991) (describing reasons a deponent generally cannot and should not be expected to provide contention-type discovery, particularly in a complicated patent case).

C. <u>Boston Scientific's Motion to Compel re MTI's Gamma Product</u>

This motion represents Boston Scientific's effort to learn more about "Project Gamma"; as

---

misleading, its amended response should so state.

United States District Court
For the Northern District of California

such it presents issues that largely correspond to the first prong of UC's motion discussed in the preceding section. Initially, however, a somewhat different dispute arose because Boston Scientific worded its discovery requests slightly differently than those of UC. Instead of generally seeking documents relating to MTI's efforts to develop "detachable embolization coil products" or the feasibility of "designing around" the patents in suit, Boston Scientific propounded requests seeking information regarding any products "reasonably substitutable" for the accused products. Because the Gamma Project products are not yet approved for commercial use or sale, MTI reasonably took the position that any documents regarding the Gamma Project were not *responsive* to Boston Scientific's requests. Notwithstanding its contention that the documents are beyond the "ambit" of the requests, MTI has produced to Boston Scientific the same materials regarding Project Gamma that it produced to UC.

Although MTI may be technically correct that wording of the discovery requests did not implicate products not yet commercially available, there appears to be no reason to require Boston Scientific to propound new requests that would less ambiguously reach Project Gamma materials. Based on Boston Scientific's reply papers, the only additional documents it seeks are any marketing materials regarding Project Gamma that have not yet been produced. Boston Scientific asserts that it will accept MTI's representation that no such documents exist if that is verified in a formal response. Accordingly, the motion is GRANTED as to such marketing materials, and MTI shall produce any such additional documents or verify that none exists. As to Boston Scientific's request for further deposition testimony from Thomas Fogarty on the subject of Project Gamma marketing plans, the court has granted UC's motion for additional testimony on its Topic 30 on the same subject, as to which Mr. Fogarty was the designee. Boston Scientific may participate in that deposition.[6]

Finally, Boston Scientific's motion also sought a further response to Interrogatory No. 7 and further deposition testimony on Topic Nos. 9 and 10. Boston Scientific's reply papers mention

---

[6] Boston Scientific has not pointed to any topic in a deposition notice it served under Rule 30 (b) (6) that would require such testimony. There appears to be no reason, however, to preclude Boston Scientific from examining Fogarty on the subject, to the extent that its questioning is not duplicative and does not contravene the ordinary deposition time limits. Additionally, it appears the only reason that Fogarty was instructed not to answer questions on this topic at his prior deposition was an issue involving the protective order that has since been resolved.

United States District Court

For the Northern District of California

1  neither the interrogatory nor the deposition topics. It appears that Boston Scientific recognizes that

2  the interrogatory response is complete in light of MTI's position that Project Gamma does not

3  represent a competing or "reasonably substitutable" product, since it is not yet approved for sale.

4  Boston Scientific also apparently accepts MTI's representations that it has no witness that can testify

5  as to Topic No. 9 and that the parties have resolved their disputes as to Topic No. 10.  Accordingly,

6  the motion will be DENIED as to Interrogatory No. 7 and deposition Topic Nos. 9 and 10.

7         D.  <u>MTI's Motion to Compel re Communications With Translator Franco Cossu</u>[7]

8         When one or more of the patents-in-suit was under prosecution, counsel for UC retained the

9  services of an Italian-to-English translator, Franco Cossu.  Mr. Cossu was engaged to produce, for

10  submission to the PTO, a translation of an article written in Italian by the co-inventor of the claimed

11  technology, UC's then-employee, Dr. Guido Guglielmi.[8]

12         In connection with the merits of this action, a dispute has arisen as to whether the Cossu

13  translation included a misleading translation of one word, such that UC did not fulfill its duty of

14  candor to disclose prior art to the PTO. To rebut that argument, UC has argued not only that the

15  translation was *not* erroneous or misleading, but that UC cannot be charged with any errors that

16  might exist, because the translation was *independent*.

17         In response to MTI's discovery requests, UC has produced documents and allowed

18  deposition questioning with respect to communications between its attorneys and Mr. Cossu *prior* to

19  his formal retention as a translator.  UC contends, however, that it may withhold two documents on

20  grounds of attorney-client privilege.[9]  UC's claim of privilege is inconsistent with its assertion that

21

22         [7] This is the sole motion to compel that does not have a corresponding cross-motion for a
protective order.

23

24         [8] Defendants argue that UC's counsel had no need to retain Cossu to assist in his
representation of the client because Guglielmi, as the author of the article and an English-speaker,
could have translated and explained it to counsel.  UC, however, has made an adequate showing that
25  the circumstances of Cossu's retention were sufficient to bring counsel's communications with him
within the attorney-client privilege; the problem, as discussed below, is with the simultaneous
26  assertion of that privilege and the claim that the translation was "independent."

27         [9] There appears to be no dispute that the primary documents in dispute in this motion are
logged as entries nos. 1 and 2 on the "Supplemental Privilege Log" relating to Cossu. To the extent
28  that the conclusions herein are arguably applicable to any other withheld Cossu documents or

Cossu's translation was "independent."  As UC points out, however, the rule against "selective waiver" does not apply here, because there is no indication that UC has disclosed any privileged information with respect to communications involving Cossu.  Rather, UC has simply made an *argument*–that Cossu's translation was independent–that cannot be reconciled with its present insistence on withholding the documents in dispute.  To be sure, Cossu has testified that he arrived at his translation "independently," but without full disclosure of all communications between him and any UC representatives.  An inference, therefore, can be drawn that he may have been given instructions or directions, or even simply exposed to contextual information, that possibly compromised his independence or influenced his translation choices, even if only to a subtle degree.

Although there is no indication that Cossu was retained in anticipation of litigation, and even though the claim here is attorney-client privilege rather than work product protection, the circumstances are somewhat analogous to those involving communications between an attorney and a retained expert consultant.  If the consultant is designated to testify as an expert witness at trial, then many courts will find that *all* communications between the attorney and the consultant are subject to disclosure.  *See, e.g., Karn v. Ingersoll Rand Co.*, 168 F.R.D. 633, 638-39 (N.D. Ind.1996) (concluding that 1993 amendments to Fed. R. Civ. Pro. 26 created a "bright line rule" requiring disclosure of all documents provided to an expert without regard to any "assertion of work product or privilege."); *but cf. Haworth, Inc. v. Herman Miller, Inc.*, 162 F.R.D. 289, 295 (W.D. Mi. 1995) (precluding disclosure of "core attorney work product" even after 1993 amendments.)  One policy basis for requiring the disclosure of the content of communications between an attorney and a testifying expert is that "it would be fundamentally misleading, and could do great damage to the integrity of the truth finding process, if testimony that was being presented as the independent thinking of an 'expert' in fact was the product, in whole or significant part, of the suggestions of counsel."  *Intermedics v. Ventritex, Inc.*, 139 F.R.D. 384, 395-92 (N.D.Cal.1991).

Here, in a similar manner, UC has proffered its assertion that the Cossu translation is "independent" as part of its defense, but is resisting allowing full inquiry into whether the translation

---

information, counsel are expected to take this ruling into account should disputes arise as to the production of any such materials.

**United States District Court**
For the Northern District of California

1   could have been influenced by the suggestions of counsel.  At this juncture, however, UC has only

2   made the argument, it has neither designated Cossu as a witness for trial, nor otherwise presented

3   this argument to a finder of fact in a manner analogous to presenting an expert witness.

4   Accordingly, it would be premature to conclude that disclosure of the documents in dispute must be

5   compelled for reasons akin to those that lead courts to require disclosure of similar materials in the

6   context of designated expert witnesses.[10]   The motion will therefore be denied at this juncture,  with

7   the understanding that the issue may need to be revisited depending on the use UC makes of the

8   translation at issue.

9          E.  <u>MTI's Motion to Compel UC to Provide Rule 30 (b) (6) Deposition Testimony</u>[11]

10         MTI seeks to compel UC to produce a witness or witnesses to testify under Rule 30 (b) (6) of

11   the Federal Rules of Civil Procedure as to seventeen numbered topics.  UC objects generally to any

12   such deposition or depositions, pointing to the extensive number of depositions that have already

13   been taken in this action or in related actions pending in this district.  UC also makes a somewhat

14   vague offer to "designate" prior depositions, or portions thereof, such that they could be deemed as

15   "binding" on UC, despite the fact the deponents each testified in an individual capacity, rather than

16   as designees under Rule 30 (b) (6).  Although the notion of a procedure that minimizes the expenses

17   and burdens of discovery for parties and deponents generally has appeal, UC's proposal is not

18   feasible.  Not only has UC failed to set out with adequate specificity what testimony it would

19   designate, even if it were to do so, such *post hoc* designations would not be an adequate substitute

20   for MTI's right to take depositions under Rule 30 (b) (6).  Among other things, when the prior

21   depositions were taken, UC was under no obligation to ensure that the deponents were adequately

22   prepared to respond with all the information that was in the institutional possession of UC.

23

24       [10]  The Court does not intend to prejudge what the result would be were the issue ripe for
     disposition–that is, if it were clear that UC intended to make the argument to a trier of fact that the
     translation was independent while still refusing to disclose these documents.  The Court notes that
25   even if it were determined at that time that UC remained within its rights to stand on the privilege,
     defendants would at a minimum likely be able to argue that the fact-finder should draw an adverse
26   inference that the translation was influenced by UC and might be able to seek other relief from the
     presiding judge to preclude the argument.

27

28       [11]  MTI has withdrawn the portion of this motion that sought to compel further production of
     documents.

**United States District Court**
For the Northern District of California

1   Accordingly, it is appropriate to require UC to produce a witness or witnesses to testify under Rule

2   30 (b) (6) in response to the deposition notice in dispute.

3           That said, some of the specific topics set out in the deposition notice bear further

4   examination.  Topic No. 8 relates to "processes for occluding a vascular cavity *known to Target*" as

5   of certain dates.  As UC points out, asking its designee to testify as to what another party knew or

6   did not know is somewhat anomalous.  Nevertheless, the result is not, as UC suggests, that it

7   necessarily need not produce a witness on this topic.  By virtue of the relationship between UC and

8   Target, it is certainly *possible* that UC has at least *some* institutional knowledge regarding what

9   Target did or did not know on the subject.  If so, UC should produce a witness to testify on the point,

10  however short the deposition might prove to be.[12]  If UC has *no* such institutional knowledge on this

11  topic whatsoever, it may instead produce a verified declaration so stating.

12          Topics 10, 11, and 12 similarly seek information relating to testing and related matters

13  regarding *Target's* products.  Again, to the extent UC has knowledge of such matters, it must

14  produce a witness. If it has none at all, it shall provide a declaration to that effect.  UC's further

15  objection that these topics inappropriately seek "fact testimony on claim construction" is overruled.

16  As worded, the topics seek only factual information regarding any testing that was performed, and

17  the protocols and results of any such testing.

18          Topic No. 15 relates to any "redesigns" of the Guglielmi Detachable Coil between 1990 and

19  2000.  UC asserts that any such redesigns have "largely been the province of Target."  Once again,

20  UC should either produce a witness as to whatever knowledge it may have on the topic, or a

21  declaration that it has none.  UC's relevance objections are overruled.

22          Topics 5, 6, and 7 ask for testimony regarding "similarities and differences" between certain

23  products disclosed in various patents or designed and manufactured by Target.  UC is correct that

24  these topics seek legal conclusions and contentions inappropriate in the context of a Rule 30 (b) (6)

25  deposition.  See *McCormick- Morgan, Inc. v. Teledyne Indus., Inc.*, *supra,* section B.  UC will not be

26

27          [12]  A deposition question phrased similarly to the wording of this topic could be
     objectionable as calling for speculation, e.g. "What did Target know?"  The topic, however,
     encompasses other questions that would not be subject to that objection such as "What did Target

28  say about its knowledge?" or "What did you tell Target about this subject?

1    required to produce a witness on these topics.

2        UC's objections to the remaining topics are all substantially grounded in its contentions that

3    prior individual depositions have adequately covered the topics, or that it should not be called upon

4    to address matters primarily within the knowledge of Target.  Those objections are rejected for the

5    reasons stated above, and the motion is GRANTED to the extent set forth and otherwise DENIED.

6                 F.  MTI's Motion to Compel Boston Scientific to Provide Rule 30 (b) (6) Deposition
                      Testimony

7        The first prong of this motion largely dovetails with the motion discussed in the preceding

8    section–whether Boston Scientific must produce a witness or witnesses under Rule 30 (b) (6).  As

9    discussed above, the fact that there have been many prior individual depositions does not eliminate

10   MTI's right to take depositions under Rule 30 (b) (6). Again, however, the specific topics require

11   further examination.

12       Topic No. 1 seeks information as to "all guidewires made and/or designed by Target prior to

13   March 13, 1990."  Boston Scientific's relevance objection is overruled.  Boston Scientific contends,

14   however, that it has *no* institutional knowledge on this topic except as is reflected in documents in its

15   possession.  Under the circumstances, it would serve no useful purpose to require a Boston Scientific

16   witness to review and familiarize himself or herself with documents that have been or can be

17   provided to MTI.  Consistent with the rulings above, however, Boston Scientific must at a minimum

18   provide a sworn declaration that it has no institutional knowledge beyond that reflected in the

19   documents and it must produce any such documents not previously produced.

20       Topic No. 2 similarly seeks, among other things, pre-1990 information that Boston Scientific

21   contends it does not possess except in documents.  Boston Scientific's relevance and over-breadth

22   objections are overruled.  To the extent the topic requests information regarding events as to which

23   Boston Scientific has no knowledge other than that reflected in its documents, the ruling is the same

24   as set out in the preceding paragraph.  To the extent that Boston Scientific has institutional

25   knowledge of any responsive information as to any more recent events beyond that shown in the

26   documents, Boston Scientific shall produce a witness or witnesses for deposition.

27       Boston Scientific objects to Topic Nos. 3, 5, 10, 11, 13, 14, 15, 16, 18, and 20 on the same

28   grounds that its institutional knowledge is limited to that reflected in documents.  Again, Boston

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1  Scientific must at a minimum provide a sworn declaration that it has no institutional knowledge

2  beyond that reflected in the documents and it must produce any such documents not previously

3  produced.

4       Boston Scientific objects to providing a witness on Topics 4, 6, and 12 solely on grounds of

5  relevance.  In light of the broad definition of relevance under Rule 26 of the Federal Rules of Civil

6  Procedure 26, the objection is overruled.  Events occurring subsequent to the priority dates of the

7  patents in suit are not indisputably irrelevant, for purposes of discovery at least, to issues such as

8  commercial success. Boston Scientific shall provide a witness or witnesses to provide responsive

9  testimony.

10      Topics 7, 8, and 9 are identical to Topics 5, 6, and 7 directed to UC.  As set forth above,

11  those topics seek legal conclusions and contentions inappropriate in the context of a Rule 30 (b) (6)

12  deposition.  Boston Scientific will not be required to produce a witness on these topics.

13      Boston Scientific's objection to Topics 17, 19, and 21 is solely based on relevance. Again,

14  based on the broad definition of relevance provided by Rule 26, the objection is overruled.  Boston

15  Scientific's present practices are at least arguably pertinent to MTI's contentions regarding claim

16  "definiteness." Boston Scientific shall provide a witness or witnesses to provide responsive

17  testimony.

18      Topic No. 22 seeks information as to when and how Boston Scientific became aware of any

19  claim that there was any deficiency in the claim of priority for the patents in suit.  Boston

20  Scientific's objection that this topic implicates attorney-client privilege and work product such that

21  the subject matter would be better addressed through written discovery, is well-taken[13].  Boston

22  Scientific will not be required to produce a witness on this topic.

23      Boston Scientific's objections to Topic No. 23–relating to communications between Guido

24  Guglielmi and Ivan Sepetka– are not fundamentally different from UC's arguments discussed above

25  that a party need not produce a witness under Rule 30 (b) (6) where there has been prior deposition

26

27      [13]  MTI's contention on reply that Boston Scientific's response to an interrogatory on this
    subject is "evasive" does not support requiring a deposition.  The remedy for an evasive
28  interrogatory response is meet and confer efforts to obtain an amended response and court
    intervention if and only if those efforts prove unsuccessful.

testimony on the subject from individuals or where another party presumably has the most information on the topic.  Consistent with the rulings above, Boston Scientific shall either produce a witness as to whatever knowledge it may have on the topic, or a declaration that it has none.

The final deposition topic in dispute is No, 24, which is identical to Topic No. 15 directed to UC, discussed above. Boston Scientific's objections are overruled and it shall produce a witness or witnesses to testify on this topic.

The second prong of this motion seeks to compel the further production of documents.  After the motion was filed, Boston Scientific produced many of the requested documents despite its contention that they were of "marginal relevance."  The only remaining disputes involve, (1) documents that are otherwise responsive but that are dated after February 24, 1992 (the filing date of the second Guglielmi patent) and, (2) documents related to "Seeker and Taper" guidewires *other* than the specific guidewires modified during the development of the claimed invention.  Again, under the broad definition of relevance provided by Rule 26 of the Federal Rules of Civil Procedure, Boston Scientific's objections to production of responsive documents are overruled.

G.  The Cross-Motions

As noted above, five of the motions to compel generated cross-motions for protective orders.[14]  It is unclear on what basis the parties concluded that they should bring motions for protective orders in addition to opposing the motions to compel, given that none of the motions for protective orders raise issues distinct from or additional to the matters raised in the oppositions.  The Court appreciates, however, that the parties stipulated to a briefing schedule that eliminated reply briefs in support of the motions for protective orders, and that none of the parties appeared to use the device of a motion for protective order to strategic advantage, either for the perceived benefit of "having the last word" or to evade the page limitations set forth in the Civil Local Rules.

That said, it appears that none of the motions for a protective order present any issue not addressed above.  Accordingly, each protective order is hereby granted to the extent that the corresponding motion to compel has been denied in the discussion above, and the motions for

---

[14]  The exception was the motion involving translator Cossu, discussed in section D above.

1  protective orders are otherwise denied.

2                                    IV. CONCLUSION

3          The pending motions are GRANTED to the extent set forth above and are otherwise

4  DENIED.

5  IT IS SO ORDERED.

6  Dated: April 9, 2007                        _____
                                               RICHARD SEEBORG
7                                              United States Magistrate Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28  ORDER
   C 03 05669 JW (RS)

**United States District Court**
For the Northern District of California

14

**THIS IS TO CERTIFY THAT NOTICE OF THIS ORDER HAS BEEN GIVEN TO:**

David L. Anstaett    david.anstaett@hellerehrman.com

Gabrielle E. Bina    gbina@hewm.com, autumn.nero@hellerehrman.com; david.jones@hellerehrman.com

Wendy Lynn Bjerknes    Wbjerknes@fenwick.com,

Henry Zuzueta Carbajal , III    hcarbajal@fenwick.com, ssanford@fenwick.com

Chien-Ju Alice Chuang    achuang@fenwick.com, dyoungman@fenwick.com

Charles G. Curtis , Jr    ccurtis@hewm.com,

J. Anthony Downs    jdowns@goodwinprocter.com,

Julie Lynn Fieber    jfieber@flk.com

Rita A. Hao    rita.hao@ucop.edu

David J. Harth    dharth@hewm.com, pdean@hewm.com; tgresl@hewm.com; tanders@hewm.com

Michael Francis Kelleher    mkelleher@flk.com,

Amanda Marie Kessel    akessel@goodwinprocter.com

Lissa Rose Koop    Lissa.Koop@Hellerehrman.com

Lynn H. Pasahow    lpasahow@fenwick.com

Nicole Elise Perroton    nperroton@goodwinprocter.com, lthomas@goodwinprocter.com

Michael K. Plimack    mplimack@hewm.com

Patrick E. Premo    ppremo@fenwick.com, mguidoux@fenwick.com

Colin G. Sandercock    csandercock@proskauer.com, cherron@proskauer.com

Roland Schwillinski    rschwillinski@goodwinprocter.com,

Michael J. Shuster    mshuster@fenwick.com

John S. Skilton    jskilton@hewm.com

Allison H Stiles    astiles@goodwinprocter.com

Michael G. Strapp    mstrapp@goodwinprocter.com

Patrick S. Thompson    pthompson@goodwinprocter.com

Michelle M. Umberger    mumberger@hewm.com, zseyferth@hewm.com

ORDER
C 03 05669 JW (RS)

United States District Court

For the Northern District of California

1    Sarah C. Walkenhorst      swalkenhorst@hewm.com,

2    Paul F. Ware , JrPC      pware@goodwinprocter.com,

3

4    Counsel are responsible for distributing copies of this document to co-counsel who have not
     registered for e-filing under the Court's CM/ECF program.

5

6    **Dated: 4/9/07**                          **Chambers of Judge Richard Seeborg**

7
                                                **By:**         **/s/ BAK**
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   ORDER
     C 03 05669 JW (RS)

**United States District Court**

For the Northern District of California