United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| The Regents of the University of California,<br><br>      Plaintiff/Counterclaim Defendant,<br>   v.<br><br>Micro Therapeutics Inc., et al.,<br><br>Defendants/Counterclaimants/Third Party Plaintiffs<br><br>   v.<br><br>Boston Scientific Corp., et al.,<br><br>      Third Party Defendants. | NO. C 03-05669 JW<br><br>**ORDER SUSTAINING DEFENDANTS' OBJECTION TO MAGISTRATE JUDGE SEEBORG'S ORDER DENYING DEFENDANTS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS** |

## I.  INTRODUCTION

On April 9, 2007, Magistrate Judge Seeborg issued an Order Re: Motions to Compel and Motions for Protective Orders. (hereafter, "Order," Docket Item No. 535.) The Order found, *inter alia*, that two communications between Plaintiff's prosecution counsel and Franco Cossu ("Cossu"), an Italian-to-English translator, were not discoverable because they were potentially protected by the attorney-client privilege. On April 23, 2007, Defendants filed their objection to the Order. (hereafter, "Objection," Docket Item No. 578.) The Court conducted a hearing on June 5, 2007. Based on the papers submitted to date and oral arguments of counsel, the Court SUSTAINS Defendants' Objection to Magistrate Judge Seeborg's Order.

## II. BACKGROUND

This is a patent infringement case in which Plaintiff alleges that Defendants infringed twelve of Plaintiff's patents relating to devices and apparatuses for occluding vascular cavities. Defendants' Fourth Affirmative Defense is that Plaintiff's patents are unenforceable by reason of inequitable conduct for two reasons. First, Plaintiff allegedly initially failed to disclose to the Patent and Trademark Office ("PTO") the *1983 Congresso Nazionale Paper* (and the prior art experiments described within) (hereafter, "Article"), written in Italian by the co-inventor of the claimed technology and Plaintiff's then-employee, Dr. Guido Guglielmi. Second, Plaintiff subsequently provided to the PTO an intentionally false translation and mischaracterization of the paper;[1] the translation was provided by Cossu. (See First Amended Answer, Affirmative Defenses, and Counterclaim of Micro Therapeutics Inc. and Dendron GmbH; Jury Demand; Certificate of Interested Persons, Docket Item No. 46; see also Order at 7.)

Defendants sought discovery of Plaintiff's counsel's communications with Cossu; Plaintiff withheld two of the documents sought on grounds of attorney-client privilege. (Order at 7.) The first document is an undated note sent by Cossu to Plaintiff's prosecution counsel, Attorney Dawes. The second document is a letter from Dawes to Cossu dated May 15, 1996. Both documents are described as, "Communication with patent counsel relating to translation services for Italian article." (Declaration of Gabrielle E. Bina in Support of Defendants' Motion to Compel Production of Documents Ex. A, Docket Item No. 393.)

Throughout this litigation, Plaintiff has proffered two defenses to Defendants' charge of inequitable conduct. First, Plaintiff contends that Cossu's translation is accurate, not erroneous or misleading. (See, e.g. Plaintiff's Opposition to and Defendants' Objection to and Motion for Review of Magistrate Judge Seeborg's Order Denying Defendants' Motion to Compel Production of Documents at 2, hereafter, "Opposition," Docket Item No. 638.) Second, Plaintiff has repeatedly

---

[1] Specifically, Defendants contend that Cossu mistranslated one critical word, *rottura*.

2

contended that it cannot be charged with any errors that might exist in the translation, because the translation was independent.[2]

Defendants filed a motion to compel production of the two documents that Plaintiff withheld. Id. On April 9, 2007, the Magistrate Judge denied the motion, finding as follows:

> [Plaintiff] has simply made an *argument*—that Cossu's translation was independent—that cannot be reconciled with its present insistence on withholding the documents in dispute. To be sure, Cossu has testified that he arrived at his translation "independently," but without full disclosure of all communications between him and any [of Plaintiff's] representatives. An inference, therefore, can be drawn that he may have been given instructions or directions, or even simply exposed to contextual information, that possibly compromised his independence or influenced his translation choices, even if only to a subtle degree . . .
>
> [Plaintiff] has proffered its assertion that the Cossu translation is "independent" as part of its defense, but is resisting allowing full inquiry into whether the translation could have been influenced by the suggestions of counsel. At this juncture, however, UC has only made the argument, (sic) it has neither designated Cossu as a witness for trial, nor otherwise presented this argument to a finder of fact in a manner analogous to presenting an expert witness. Accordingly, it would be premature to conclude that disclosure of the documents in dispute must be compelled for reasons akin to those that lead courts to require disclosure of similar materials in the context of designated expert witnesses. The motion will therefore be denied at this juncture, with the

---

[2] (See, e.g. Supplemental Brief in Support of Plaintiff's Motion for Summary Judgment of No Inequitable Conduct and in Opposition to Defendants' Motion for Summary Judgment at 15, Docket Item No. 285 ("The fact that brief telephonic communication occurred among Mr. Davis, Mr. Cossu, and Dr. Guglielmi – the details of which are privileged – is not improper . . . the conversation did not negate the independence or accuracy of Mr. Cossu's translation, as he unequivocally testified."); Motion to Strike Inadmissible Evidence Submitted in Support of Defendant MTI's Supplemental Summary Judgment Brief at 2-4, Docket Item No. 284 ("Daniel Dawes, The Regents' attorney responsible for prosecuting the patents-in-suit, testified at length to the circumstances involving his decision to retain an independent, Italian translator, Franco Cossu . . . . MTI also knows based on its own cross-examination that Mr. Cossu arrived at the translation of the word ["rottura"] independently and, in fact, prepared the translation before ever speaking to Dr. Guglielmi or Dawes on May 23 and 24, 1996 . . .") (emphasis added); The Regents of the University of California's Supplemental Reply Brief in Support of its Motion for Summary Judgment at 3, Docket Item No. 295 ("Mr. Cossu's sworn testimony not only confirmed the accuracy and independence of his translation, but he also testified that he translated it the way he did before speaking to Dr. Guglielmi and that it was the only translation he considered."); Reply in Support of the Regents' Motion to Strike Inadmissible Evidence Submitted in Support of Defendant MTI's Supplemental Summary Judgment Brief at 7, Docket Item No. 294 ("Mr. Cossu testified that he arrived at translation of the Italian word "roturra" (sic) on his own, that he did not consider any alternative translation, that this translation was included in the original draft that he prepared, and that he never sent any other translation of the Italian Paper to Dr. Guglielmi or Mr. Dawes other than the draft that was ultimately provided to the PTO."))

1 understanding that the issue may need to be revisited depending on the use UC makes
2 of the translation at issue.

3 (Order at 8-9.)  Presently before the Court is Defendants' Objection to and Motion for Review of
4 Magistrate Judge Seeborg's Order Denying Defendants' Motion to Compel Production of
5 Documents.

### III.  DISCUSSION

A district court may modify a magistrate judge's ruling on a non-dispositive matter, such as an order to compel discovery, if the order is "clearly erroneous" or "contrary to law."  28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); Bahn v. NME Hospitals, Inc., 929 F.2d 1404, 1414 (9th Cir. 1991).  Pursuant to Civil Local Rule 72-2, the court may not grant a motion objecting to a Magistrate Judge's order without first giving the opposing party an opportunity to brief the matter. See Civ. L.R. 72-2.  In this case, Plaintiffs have opposed Defendants' Objection.  (See Docket Item No. 638.)

Defendants contend that the Magistrate Judge erred in finding that Plaintiff's counsel's communications with Cossu are protected by the attorney-client privilege.  (Objection at 6.)  The attorney-client privilege protects disclosure of communications between a client and its attorney.[3]  In re Echostar Communications Corp., 448 F.3d 1294, 1298-99 (Fed. Cir. 2006).  The purpose of the attorney-client privilege is to promote full and frank communication between a client and its attorney so that the client can make well-informed legal decisions and conform its activities to the law.  Id. at 1300-01.

The general rule is that disclosure of confidential communications or attorney work-product to a third party constitutes a waiver of privilege as to the items disclosed.  Bd. of Trustees v. Roche Molecular Sys., Inc., 237 F.R.D. 618, 622 (N.D. Cal. 2006).  An exception to this general rule occurs where privileged information is disclosed to "one employed to assist the lawyer in the

---

[3] Federal Circuit law governs whether particular materials are discoverable in a patent case, if the materials relate to an issue of substantive patent law.  Echostar, 448 F.3d at 1298.

4

rendition of professional legal services." Samuels v. Mitchell, 155 F.R.D. 195, 198 (N.D. Cal. 1994). Within the patent context, courts have found that communications between an inventor and prosecuting counsel in anticipation of the filing of a patent application are also privileged. Adv. Cardiovascular Sys., Inc. v. C.R. Bard, Inc., 144 F.R.D. 372, 375-76 (N.D. Cal. 1992).

The parties particularly dispute the significance of United States v. Kovel, 296 F.2d 918 (2nd Cir. 1961), one of the leading cases on the attorney-client privilege and communications with third-parties. In Kovel, a non-lawyer accountant employed by a law firm refused to testify before a grand jury concerning his communications with a client, citing attorney-client privilege. Id. at 919-20. The Kovel court analogized the accountant's situation to that of a foreign language interpreter. The court found that where an attorney and a client require an interpreter to communicate, the privilege extends to the client's communications with the non-lawyer interpreter where: (1) the attorney engages an interpreter to provide a literal translation of the client's story; (2) the attorney, who is minimally competent in the foreign language, has an interpreter in the room to assist with client communications; (3) the client supplies the translator; or (4) the attorney sends the client to an interpreter proficient in the foreign language with directions to interview the client and summarize the interview for the attorney. Id. at 921. In each scenario, the court held that the policy justifications of the attorney-client privilege were satisfied. Id. at 921-22. Applying these principles in the accounting context, the court found:

> [T]he presence of the accountant, whether hired by the lawyer or by the client, while the client is relating a complicated tax story to the lawyer, ought not destroy the privilege, any more than would that of the linguist in the second or third variations of the foreign language theme discussed above; the presence of the accountant is necessary, or at least highly useful, for the effective consultation between the client and the lawyer which the privilege is designed to permit. By the same token, if the lawyer has directed the client, either in the specific case or generally, to tell his story in the first instance to an accountant engaged by the lawyer, who is then to interpret it so that the lawyer may better give legal advice, communications by the client reasonably related to that purpose ought fall within the privilege . . . What is vital to the privilege is that the communication be made in confidence for the purpose of obtaining legal advice from the lawyer.

Id. at 922; see also Cavallaro v. United States, 284 F.3d 236, 247 (1st Cir. 2002).

5

In this case, there is presently no evidence before the Court that communications between Cossu and Dawes, or Cossu and Dr. Guglielmi, occurred in order to assist Dawes in advising Plaintiff. For instance, there is no evidence that Cossu was hired to work with Dr. Guglielmi and Dawes (1) to generate the most favorable translation to Plaintiff of which the Article was readily susceptible or (2) to assist Dr. Guglielmi in explaining to Dawes what he intended the word "rottura" to mean, as co-author of the Article. Both of these examples are similar to Kovel: in each case, Cossu's translation would have been in aid of Dawes' representation of his client and related communications between the three individuals would likely have been privileged. Rather, Cossu (according to Plaintiff's own representations to the Court) was retained to produce an independent translation of a publically available article for public submission to the PTO. It does not advance the policy underlying the attorney-client privilege—of full and frank communication between a client and attorney—to extend the privilege to attorney or client communications with a third-party, "independent" translator.

Accordingly, the Court declines to find that Cossu was employed to assist Dawes in rendering professional legal services to Plaintiff. Phrased differently, the Court declines to find that the two disputed communications (made between Cossu and Dawes) were made in confidence for the purpose of Plaintiff obtaining legal advice from Dawes.

## IV. CONCLUSION

The Court SUSTAINS Defendants' Objection to Magistrate Judge Seeborg's Order. Plaintiff shall produce the two withheld documents to Defendants within fourteen (14) days of this Order. Plaintiff may redact any portion of the documents not pertaining to Cossu's provision of services as an independent translator.

The parties shall file a joint status report with the Court within 21 days of this Order confirming that Plaintiff has produced the documents and indicating whether the documents were redacted. If either of the documents were redacted and on the motion of either party, the Court will

1  schedule an *in camera* review of the unredacted documents to determine whether the redacted
2  portions are protected by the attorney-client privilege.

4  Dated:  June 6, 2007

                                                  JAMES WARE
                                                  United States District Judge

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1 **THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

2 Allison H Stiles astiles@goodwinprocter.com
Amanda Marie Kessel akessel@goodwinprocter.com
3 Autumn Noelle Nero autumn.nero@hellerehrman.com
Charlene M. Morrow cmorrow@fenwick.com
4 Charles G. Curtis ccurtis@hewm.com
Chien-Ju Alice Chuang achuang@fenwick.com
5 Christopher T. Holding cholding@goodwinprocter.com
Colin G. Sandercock csandercock@proskauer.com
6 David Edwin Jones dejones@hewm.com
David J. Harth dharth@hewm.com
7 David L. Anstaett david.anstaett@hellerehrman.com
Gabrielle E. Bina gbina@hewm.com
8 Henry Zuzueta Carbajal hcarbajal@fenwick.com
J. Anthony Downs jdowns@goodwinprocter.com
9 John S. Skilton jskilton@hewm.com
John S. Skilton jskilton@hewm.com
10 Julie Lynn Fieber jfieber@flk.com
Lissa Rose Koop Lissa.Koop@Hellerehrman.com
11 Lynn H. Pasahow lpasahow@fenwick.com
Michael Francis Kelleher mkelleher@flk.com
12 Michael G. Strapp mstrapp@goodwinprocter.com
Michael J. Shuster mshuster@fenwick.com
13 Michael K. Plimack mplimack@hewm.com
Michelle M. Umberger mumberger@hewm.com
14 Nicole Elise Perroton nperroton@goodwinprocter.com
Patrick E. Premo ppremo@fenwick.com
15 Patrick S. Thompson pthompson@goodwinprocter.com
Paul F. Ware pware@goodwinprocter.com
16 Rita A. Hao rita.hao@ucop.edu
Roland Schwillinski rschwillinski@goodwinprocter.com
17 Sarah C. Walkenhorst swalkenhorst@hewm.com
Wendy Lynn Bjerknes Wbjerknes@fenwick.com
18

19 **Dated: June 6, 2007**                              **Richard W. Wieking, Clerk**

20
                                                       **By:   /s/ JW Chambers
21                                                            Elizabeth Garcia
                                                              Courtroom Deputy**
22
23
24
25
26
27
28