***E-FILED 7/13/07***

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| THE REGENTS OF THE UNIVERSITY OF CALIFORNIA,<br><br>　　　　Plaintiff/Counterclaim Defendant,<br>　v.<br><br>MICRO THERAPEUTICS, INC., et al,<br><br>　　　　Defendants/Counterclaimants and Third Party Plaintiffs,<br><br>　v.<br><br>BOSTON SCIENTIFIC CORPORATION, et al.<br><br>　　　　Third Party Defendants.<br>_____/ | NO. C 03 05669 JW (RS)<br><br>**ORDER RE MOTION TO COMPEL UC TO PRODUCE UNREDACTED DOCUMENTS** |

## I. INTRODUCTION

Defendants and Third-Party Plaintiffs Micro Therapeutics, Inc., Dendron GmnH, and ev3 Inc. (collectively, "MTI") move to compel Plaintiff and Counterclaim Defendant The Regents of the University of California ("UC") to produce unredacted copies of documents previously produced under Bates Nos UCR041068-69 and UCR041076-80. Upon consideration of the parties' briefs, the motion will be granted, as set forth below.

## II. BACKGROUND

This discovery dispute involves two documents written by UC's patent prosecution counsel

1

relating to efforts made to locate a copy of a doctoral thesis authored by a cousin of the inventor, Dr. Guido Guglielmi.[1] The first document, Bates No UCR 041068-69, dated May 10, 1996, is a letter written by UC attorney Daniel Dawes to Giovanni Zanardo of Barzano & Zanardo Roma, an Italian law firm retained by UC. The unredacted portions of the letter consist of instructions from Mr. Dawes as to how the search for the thesis should be conducted. The second document, Bates Nos UCR 041076-80, dated June 3, 1996, is a letter from Dawes to Val Fikosky of UC's Office of Technology Transfer. In the unredacted portions of that letter, Dawes reports on Zanardo's search for the thesis and states the general conclusion that the thesis was not publicly available. UC contends that the redacted portions of these documents contain attorney-client advice, legal analysis, mental impressions, thoughts, and opinions of counsel that are protected under attorney-client privilege.

MTI seeks unredacted copies of these documents, arguing that UC has waived any attorney-client privilege objections on two different grounds.[2] First, MTI contends that production of the unredacted portions of the documents constitutes a "selective waiver" of privileged communications, such that the balance of those letters must now be produced, at least to the extent no wholly-separate subject matter is involved. UC responds by arguing that the unredacted portions disclose no privileged communications and are merely reports of factual information.

Second, MTI argues that UC has waived its attorney-client privilege by affirmatively relying on Dawes' purported good faith belief that the thesis was not available to rebut MTI's claims of inequitable conduct. MTI contends UC may not at the same time assert Dawes' good faith and yet

---

[1] Additional factual background describing this action may be found in prior court orders issued by the presiding judge and the undersigned, and will not be repeated here.

[2] MTI also argues that at Dawes' first deposition, UC took the position that the communications in question were privileged in their entirety, therefore MTI was not able to question Mr. Dawes about those documents. UC later produced the documents in question in redacted form stating that portions of them had been determined to be non-privileged. MTI suggests in passing that a further deposition of Dawes may be required as a result, but has not formally sought such relief.

2

preclude full inquiry into his knowledge and the basis thereof.[3]

## III. LEGAL STANDARDS

In general, a party has the right to discover "any matter, not privileged, that is relevant to the claim or defense of any party. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." Fed. R. Civ. P. 26(b)(1). Each party has the right to discover nonprivileged information relevant to the claim or defense of any party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. Fed. R. Civ. P. 26(b)(1).

Privileged information between attorney and client "protects confidential disclosures made by a client to an attorney in order to obtain legal advice, as well as an attorney's advice in response to such disclosures." *In re Grand Jury Investigation* 974 F.2d 1068, 1070 (9th Cir.1992) (citations omitted). "While it is essential that communications between client and attorney deal with legal assistance and advice in order to be privileged, it is not essential that such requests by the client for legal advice be expressed . . . In order to invoke the privilege . . . [t]here must be a finding that each document is involved in the rendition of legal assistance. *Burlington Industries v. Exxon Corp.*, 65 F.R.D. 26, 37-39 (D. Md. 1974).

The attorney-client privilege may be divided into eight essential elements: "(1) Where legal advice of any kind is sought, (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence, (5) by the client, (6) are at his instance permanently protected, (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived." *In re Fischel*, 557 F.2d 209, 211 (9th Cir. 1977) (quoting 8 John H. Wigmore, Evidence § 2292, at 554 (McNaughton Rev. 1961)). The core of the privilege is the element of the giving of legal advice where "the attorney must have been engaged or consulted by

---

[3] In its opposition, UC appeared not to recognize that MTI has made two distinct arguments and that its contentions about affirmative reliance would stand even if UC had not produced the letters at all. UC may be correct that "affirmative reliance" is closely related to, or simply another form of "selective waiver," but it still largely failed to address the import of the fact that it is relying on attorney Dawes' alleged good faith to rebut MTI's inequitable conduct claims.

3

1  the client for the purpose of obtaining legal services or advice - services or advice that a lawyer may
2  perform or give in his capacity as a lawyer, not in some other capacity." *Diversified Industries, Inc.*
3  *v. Meredith*, 572 F.2d 596, 602 (8th Cir. 1978).  Certain communications are not protected under the
4  privilege: "When an attorney conveys to his client facts acquired from other persons or sources,
5  those facts are not privileged." *Briton v. Department of State*, 636 F.2d 600, 604 (Fed. Cir. 1980).
6  Even if the information gathered is necessary to render legal advice, that information and its
7  transmittal to a client is not privileged. *United States v. Ackert*, 169 F.3d 136, 139 (2d Cir. 1999).

8  Furthermore, the attorney-client privilege cannot be used as a sword as well as a shield. *In re*
9  *von Bulow,* 828 F.2d 94, 103 (2d Cir 1987) (implied waiver by conduct "has been invoked most
10 often where the privilege-holder has attempted to use the privilege as both 'a sword' and 'a
11 shield.'").  If a party merely denies an allegation it does not waive the privilege, but assertions
12 regarding a defendant's good faith may be so inextricably intertwined with the defendant's state of
13 mind that the privilege must give way to an inquiry into the basis for such belief. *United States v.*
14 *Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991) (affirming trial court ruling that "if [defendant]
15 asserted his good faith, the jury would be entitled to know the basis of his understanding that his
16 actions were legal.").  Thus, to assess the validity of an affirmative defense of good faith reliance
17 that a party has voluntarily injected into the dispute, inquiry into communications that would
18 otherwise be privileged may be required. *United States v. Exxon Corp.*, 94 F.R.D. 246, 249 (D.D.C.
19 1981) ("[T]he only way to assess the validity of Exxon's affirmative defenses, voluntarily injected
20 into this dispute, is to investigate attorney-client communications.").

21 IV. DISCUSSION

22 A. <u>Selective Waiver.</u>

23 MTI's selective waiver argument turns on whether or not the material left unredacted in the
24 documents produced comprise privileged information.  It does not.

25 In its supplemental interrogatory response and in the portions of attorney correspondence that
26 have been produced, UC has disclosed details of how Dawes commissioned Zanardo to search for
27 the thesis in Italy, the specific requests that Dawes made to Zanardo as to how the search should be
28 conducted, the steps Zarnardo took to locate the thesis, Zanardo's findings at the conclusion of the

4

1  search, and then Dawes' transmittal of all the information regarding the search to Fikovsky, UC's
2  client representative.  Those disclosures do not implicate the privilege because there is no element of
3  legal advice or legal opinion involved.  UC's disclosures reveal only factual information regarding
4  the search for the thesis and contain no component of legal analysis that would render it privileged.
5  Accordingly, because no privileged information has been disclosed, the prohibition against selective
6  waiver is not implicated by the production of the redacted correspondence.

7        B. <u>Waiver by Affirmative Reliance</u>

8        Implied waiver based on "affirmative reliance" occurs generally "where the party resisting
9  discovery 'raises as a defense that which transpired between client and counsel, or reliance on
10 advice of counsel, or questions counsel's authority.'" *Jules Jurgensen/ Rhapsody, Inc. v. Rolex*
11 *Watch U.S.A., Inc.*, No. 85-5605, 1989 U.S. Dist. No. WL 6210, at *1 (E.D. Pa. Jan. 19, 1989).  A
12 litigant cannot place into issue privileged matters and also claim that what has been placed into issue
13 still remains privileged and not subject to full disclosure.  *Garfinkle v. Arcata National Corp.*, 64
14 F.R.D. 688, 689 (S.D.N.Y. 1974) (finding that defendant clearly injected an opinion letter into the
15 case as a relevant matter such that, "plaintiff is entitled to probe into the circumstances surrounding
16 the issuance of the letter. He cannot be limited to the letter itself– the finished product.").  Courts
17 frequently conclude that a party waives the protection of the attorney-client privilege when the party
18 voluntarily injects into suit a question that turns on state of mind.  *Anderson v. Nixon*, 444 F.Supp.
19 1195, 1200 (D.D.C. 1978) ("A client waives his attorney-client privilege when he brings suit or
20 raises an affirmative defense that makes his intent and knowledge of the law relevant.").

21       For example, in *Exxon*, *supra*, 94 F.R.D. at 248, the plaintiff brought a motion to compel
22 claiming certain documents were not privileged because the defendant had waived the attorney-
23 client privilege by injecting the affirmative defense of good faith reliance on the government's
24 regulations and communications.  The court reasoned that the defendant had "waived his attorney-
25 client privilege by raising the defense of good faith reliance on DOE's representations.  These
26 defenses do not solely relate to the 'objective' representations of DOE, but directly concern Exxon's
27 subjective interpretation and understanding of those representations; i.e. Exxon's corporate state of
28 mind." *Id*. at 249.  The only way the opposing party could assess the validity of the defendant's

5

1  affirmative defenses would be "to investigate attorney-client communications where Exxon's
2  interpretation of various DOE policies and directives was established and where Exxon expressed its
3  intentions regarding compliance with those policies and directives." *Id*.

4  Here, as in *Exxon*, the issue of good faith reliance is being affirmatively offered as a defense
5  by the party also seeking to use attorney-client privilege to block discovery.  In *Exxon*, the court
6  recognized that the evaluation of a good faith reliance "turns upon the subjective intention of the
7  party claiming reliance and, therefore, demands investigation into attorney-client communications
8  where such an intention would be manifested." *Id*. at 248.  UC seeks to rebut MTI's assertions of
9  inequitable conduct by arguing that UC, in good faith, relied upon Dawes' state of mind and belief
10 that the thesis was not publicly available.  UC's claim of good faith puts squarely in issue the actions
11 of Dawes and the reasoning behind his decision not to disclose the thesis to the PTO.  Therefore, any
12 documents and/or materials that are probative as to Dawes' purported determination that the thesis
13 was not publicly available are relevant in evaluating UC's good faith defense.

14 Finally, UC asserts that some of the material redacted in document Bates No. UCR 041076-
15 80 relates to matters wholly unconnected to the thesis search.  At the hearing, MTI disclaimed any
16 interest in obtaining such information.  Accordingly, the motion to compel UC to produce
17 unredacted copies of the documents bearing Bates Nos. UCR041068-69 and UCR041076-80 is
18 GRANTED, except as to any material wholly unrelated to the search for the thesis.[4]

---

[4] At the hearing, UC offered three additional cases not cited in its papers, and the Court provided MTI an opportunity to respond to those citations by letter brief.  Upon consideration of the arguments presented regarding those cases, they do not compel a different result.  Each case is distinguishable or otherwise not on point: *Postx Corp. v. Secure Data in Motion, Inc.*, No. C-02-04483 SI, 2004 U.S. Dist WL 2663518, at *5 (N.D. Cal. Nov. 20, 2004) (plaintiff expressly disavowed any intent to use advice of counsel as a defense, resulting in a finding that since plaintiff "is not using the attorney-client privilege as a sword, it has not relinquished its use as a shield"); *Lorenz v. Valley Forge Ins. Co.*, 815 F.2d 1095, 1098 (7th Cir. 1987) (finding that to waive the attorney-client privilege, a defendant "must inject a new factual or legal issue into the case"and that merely denying the plaintiff's allegations did not do so); *Ward v. Succession of Freeman*, 854 F.2d 780, 789 (5th Cir. 1988) (finding that the defendant could not have waived its privilege when "it was the plaintiffs who exploited the attorney-client communications in order to attempt to prove their claims" and the defendant "had no choice but to negate the proof by showing it acted in good faith").

6

## V. CONCLUSION

The pending motion is GRANTED to the extent set forth above.

IT IS SO ORDERED.

Dated: July 13, 2007

/s/ Richard Seeborg
RICHARD SEEBORG
United States Magistrate Judge

ORDER
C 03 05669 JW (RS)

**THIS IS TO CERTIFY THAT NOTICE OF THIS ORDER HAS BEEN GIVEN TO:**

David L. Anstaett     david.anstaett@hellerehrman.com

Gabrielle E. Bina     gbina@hewm.com

Wendy Lynn Bjerknes     Wbjerknes@fenwick.com

Henry Zuzueta Carbajal , III     hcarbajal@fenwick.com, ssanford@fenwick.com

Carolyn Chang     cchang@fenwick.com, vschmitt@fenwick.com

Chien-Ju Alice Chuang     achuang@fenwick.com, dyoungman@fenwick.com

Charles G. Curtis , Jr     ccurtis@hewm.com

J. Anthony Downs     jdowns@goodwinprocter.com

Julie Lynn Fieber     jfieber@flk.com

Rita A. Hao     rita.hao@ucop.edu

David J. Harth     dharth@hewm.com, pdean@hewm.com, tanders@hewm.com, tgresl@hewm.com

David Edwin Jones     dejones@hewm.com

Michael Francis Kelleher     mkelleher@flk.com

Amanda Marie Kessel     akessel@goodwinprocter.com

Lissa Rose Koop     Lissa.Koop@Hellerehrman.com

Charlene Marie Morrow     cmorrow@fenwick.com

Autumn Noelle Nero     autumn.nero@hellerehrman.com, djmorgan@hellerhman.com

Lynn Harold Pasahow     lpasahow@fenwick.com

Nicole Elise Perroton     nperroton@goodwinprocter.com, lthomas@goodwinprocter.com

Michael Kenneth Plimack     mplimack@hewm.com

Patrick Eugene Premo     ppremo@fenwick.com, mguidoux@fenwick.com

Colin G. Sandercock     csandercock@proskauer.com, cherron@proskauer.com

Roland Schwillinski     rschwillinski@goodwinprocter.com

Michael Jeffrey Shuster     mshuster@fenwick.com

John S. Skilton     jskilton@hewm.com

Allison H Stiles     astiles@goodwinprocter.com

ORDER
C 03 05669 JW (RS)

8

1  Michael G. Strapp    mstrapp@goodwinprocter.com

2  Patrick Shaun Thompson    pthompson@goodwinprocter.com

3  Michelle M. Umberger    mumberger@hewm.com, zseyferth@hewm.com

4  Sarah C. Walkenhorst    swalkenhorst@hewm.com

5  Paul F. Ware , JrPC    pware@goodwinprocter.com

Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the Court's CM/ECF program.

**Dated: 7/13/07**                                              **Chambers of Judge Richard Seeborg**

                                                                **By:        /s/ BAK**

ORDER
C 03 05669 JW (RS)

9